

July 18, 2018

*Via email and regular mail*

Honorable Brian P. Kemp
Secretary of State
Georgia Department of Sate
214 State Capitol
Atlanta, GA 30334
Attention: Ryan Germany, General Counsel

Re:   <u>Non-compliance with Section 8 of the National Voter Registration Act of 1993 (52 U.S.C. § 20507, 20510(b)(2)(NVRA))</u>

Dear Secretary Kemp:

We write to you on behalf of the Georgia Coalition for the People's Agenda, Inc. ("GCPA"), Asian Americans Advancing Justice – Atlanta, Inc. ("Advancing Justice – Atlanta"), ProGeorgia State Table, Inc. ("ProGeorgia"), Georgia State Conference of the NAACP ("GA NAACP"), Georgia Association of Latino Elected Officials, Inc. ("GALEO") and New Georgia Project, Inc. ("NGP"), their respective members and/or affiliates, and others similarly situated, to notify you that the enactment and implementation of the voter registration provisions of Georgia Act 250 (House Bill 268) (2017) ("HB 268"), as it amended O.C.G.A. § 21-2-220.1, violate Section 8 of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20507.

### Section 8 of the National Voter Registration Act

Section 8 of the NVRA provides as follows:

> In the administration of voter registration for elections for Federal office, each State **shall**—
>
> (1) ***ensure that any eligible applicant is registered to vote in an election-***
>
> …

1

(B) in the case of registration by mail under section 20505 of this title, if the valid voter registration form of the applicant is postmarked not later than the lesser of 30 days, or the period provided by State law, before the date of the election;

(C) in the case of registration at a voter registration agency, if the valid voter registration form of the applicant is accepted at the voter registration agency not later than the lesser of 30 days, or the period provided by State law, before the date of the election; and

(D) in any other case, if the valid voter registration form of the applicant is received by the appropriate State election official not later than the lesser of 30 days, or the period provided by State law, before the date of the election….."

52 U.S.C. § 20507(a)(1) (emphasis added).

Section 8 of the NVRA also provides that:

"Any State program or activity to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll for elections for Federal office

(1) shall be uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965 (42 U.S.C. 1973 et seq.)…."

52 U.S.C. § 20507(b)(1).

### *Georgia's Exact Match Protocol Violates Section 8*

It has come to our attention that as a result of the enactment and implementation of O.C.G.A. § 21-2-220.1, the State of Georgia, your office and County registrars are failing to ensure that eligible Georgia voter registration applicants who submit complete and accurate voter registration forms are registered to vote in violation of Section 8 of the NVRA.

Specifically, as a result of your enforcement of O.C.G.A. § 21-2-220.1, voter registration applicants are flagged and placed in "pending" status if the information on their voter registration form does not *exactly* match similar personal information in the Georgia Department of Driver Services (DDS) database or the Social Security Administration Help America Voter Verification (SSA HAVV) databases. If voters do not cure this "no-match," they are removed from the registration rolls after 26 months. This "exact match"

protocol is not used in most other states because of its extraordinarily high error rate. By employing the demonstrably flawed "exact match" protocol as part of the voter registration process, the State of Georgia, your office and Country registrars have prevented, and will continue to prevent, eligible Georgia citizens from becoming fully registered voters in violation of Section 8 of the NVRA.

All relevant parties, including your office, have been on actual notice since at least 2009 that the "exact match" voter registration protocol—first introduced as an administrative policy by your office in 2009 and now enforced through O.C.G.A. § 21-2-220.1—produces a high volume of "no-match" results, even when eligible applicants have submitted entirely accurate information on their voter registration forms. This often occurs through no fault of the applicant. For example, any time there is a data entry error in the transfer of information from paper voter registration applications to the state's electronic voter registration system or in the entry of applicants' personal information in the DDS or SSA HAVV databases, there will be a "no-match."

These problems are endemic to the SSA HAVV system. As you are aware, the Social Security Administration's Inspector General published a report identifying serious flaws with the SSA HAVV verification system that have produced large numbers of false "no-matches" and inconsistent verification results.  *See*, Audit Report No. A-03-09-29115, Office of the Inspector General of the Social Security Administration, "Quick Response Evaluation: Accuracy of the Help America Vote Verification Program Responses," June 2009. The SSA Inspector General's report warned states that the high no-match response rate and the inconsistent verification responses limited its usefulness in the voter registration process:

> We believe the high no-match response rate and the inconsistent verification responses can be attributed to the lack of (1) a unique identifier (full SSN), (2) flexible matching criteria, and (3) testing to assess the accuracy of the verification responses. Because of the limitations of the matching criteria established by the legislation, the HAVV program may indicate a no-match when a match does in fact exist in SSA records. . . . [T]he high no-match response rate and the inconsistent verification responses could hinder the States' ability to determine whether applicants should be allowed to vote.

*Id.* at 4.

Despite being on notice of the high "no-match" rates, inconsistent verification responses and other serious flaws with the SSA HAVV verification system, the

3

Georgia General Assembly nevertheless enacted HB 268 into law. The bill requires that the SSA HAVV system be employed to "verify" applicants who provide the last four digits of their Social Security number on their registration forms. Moreover, it appears that the problems with the SSA HAVV system are exacerbated by your office's use of a similarly flawed "exact match" protocol for verifying applicants against the DDS database.

As you are also aware, the "exact match" verification process disproportionately prevented tens of thousands of eligible African-American, Latino-American and Asian-American Georgia citizens from successfully completing the voter registration process between 2010 and 2016 because of inherent deficiencies in the "exact match" verification protocol. *See*, *GA NAACP v. Kemp*, 2:16cv219-WCO.

As noted in a recent article by Reuters, the "exact match" verification protocol continues to disproportionately and negatively impact minority applicants. *See* Tim Reid & Grant Smith, "Missing hyphens will make it hard for some people to vote in U.S. election," https://www.reuters.com/article/us-usa-election-laws-insight/missing-hyphens-will-make-it-hard-for-some-people-to-vote-in-u-s-election-idUSKBN1HI1PX. Thus, the "exact match" verification process also violates 52 U.S.C. § 20507(b)(1) because it lacks uniformity and operates in a discriminatory manner. For those reasons, it also runs afoul of the Voting Rights Act of 1965.

### *Processing of Naturalized Citizens Registration Violates Section 8*

In addition to the overall flaws in the "exact match" protocol, current practice raises additional concerns under the NVRA with respect to naturalized citizens. As you are aware, eligible Georgia citizens are frequently identified as non-citizens through the "exact match" process when their voter registration data is matched against GA DDS records. This often occurs because, among other reasons, GA DDS records are not automatically updated to reflect when a green card-holder or other non-citizen with a Georgia driver's license becomes a naturalized U.S. citizen.

Many naturalized citizens receive assistance when registering to vote at naturalization ceremonies in Georgia and regularly include copies of their naturalization certificates with proof of their identity when they submit voter registration applications. Unfortunately, however, it appears that many of these individuals are placed into "pending" status because of a "no-match" even when they *already* provided proof of citizenship with their original application. As a result of this "pending" status, they are subject to purging after 26 months. This procedure is not required by the statute, confuses applicants, and violates Section 8 of the NVRA.

4

### *Enforcement of HB 268 Must Be Changed to Protect Voters*

Ultimately, HB 268 was enacted without sufficient safeguards to prevent unduly burdening eligible voter registration applicants or the cancellation of complete and accurate registration applications.

Please be advised that this letter serves as written notice pursuant to 52 U.S.C. § 205010(b)(3) that if the continuing violations of Section 8 are not corrected *immediately*, the aforementioned civic engagement and civil rights organizations may take legal action to enforce the NVRA. In the event that litigation becomes necessary, the organizations may consider additional legal claims under Section 2 of the Voting Rights Act of 1965, the Civil Rights Act of 1964, and the United States Constitution.

We hope, of course, that litigation will not become necessary and that a solution will be reached swiftly. Please contact us as soon as possible to discuss a possible resolution to this matter.

Sincerely,


Lawyers' Committee for Civil Rights Under Law

By
    s/ Julie M. Houk[1]
    Senior Special Counsel
    Voting Rights Project
    Lawyers' Committee for Civil Rights Under Law
    1401 New York Avenue NW, Suite 400
    Washington, DC 20005
    Email: jhouk@lawyerscommittee.org
    Telephone: 202.662.8391

Campaign Legal Center

By
    s/ Danielle Lang
    Senior Legal Counsel, Voting Rights & Redistricting
    Campaign Legal Center
    1411 K St. NW Suite 1400
    Washington, DC 20002

---

[1] Admitted to practice law in the District of Columbia, California, New Hampshire, Massachusetts and Illinois (Registered voluntarily inactive in Illinois).

   Email: dlang@campaignlegalcenter.org
   Telephone: 202-856-7911

Asian Americans Advancing Justice – Atlanta, Inc.

By
   s/ Phi Nguyen
   Litigation Director
   Asian Americans Advancing Justice – Atlanta
   5680 Oakbrook Parkway, Suite 148
   Norcross, Georgia 30093
   Email: pnguyen@advancingjustice-atlanta.org
   Telephone:  770-818-6147

Hughes Hubbard and Reed LLP

By
   s/ Vilia B. Hayes
   Hughes Hubbard & Reed LLP
   One Battery Park Plaza
   New York, NY 10004
   Email: vilia.hayes@hugheshubbard.com
   Telephone 212-837-6839

The Law Office of Bryan L. Sells LLC

By
   s/ Bryan L. Sells
   The Law Office of Bryan L. Sells, LLC
   PO Box 5493
   Atlanta, Georgia 31107-0493
   Telephone: (404) 480-4212
   Email: bryan@bryansellslaw.com


cc:    Georgia Attorney General's Office

       Clayton County Board of Elections and Registration
       Dorothy Foster Hall, Chair
       Jonesboro Historical Courthouse, Main Floor
       121 South McDonough Street
       Jonesboro, GA 30236

DeKalb County Board of Registration and Elections
Samuel Tillman, Chairman
4380 Memorial Drive, Suite 300
Decatur, GA 30032-1239

Fulton County Board of Registration and Elections
Ms. Mary Carole Cooney, Chairperson
130 Peachtree St. SW
Suite 2186
Atlanta, GA 30303

Gwinnett County Board of Registration and Elections
Stephen Day, Chairman
75 Langley Drive
Lawrenceville, GA 30046

Hall County Board of Elections and Voter Registration
Dr. Tom Smiley, Chairman
P.O. Drawer 1435
Gainesville, GA 30503