# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| GEORGIA COALITION FOR THE PEOPLES' AGENDA, INC., as an organization; ASIAN AMERICANS ADVANCING JUSTICE-ATLANTA, INC., as an organization; GEORGIA STATE CONFERENCE OF THE NAACP, as an organization; NEW GEORGIA PROJECT, INC., as an organization; GEORGIA ASSOCIATION OF LATINO ELECTED OFFICIALS, INC., as an organization; PROGEORGIA STATE TABLE, INC., as an organization; JOSEPH AND EVELYN LOWERY INSTITUTE FOR JUSTICE AND HUMAN RIGHTS, INC., as an organization; and COMMON CAUSE, as an organization; | Civil Action Case No. 1:18-cv-04727-ELR |
| Plaintiffs, | |
| v. | |
| BRIAN KEMP, in his official capacity as Secretary of State for the State of Georgia, | |
| Defendant. | |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................ 1

ARGUMENT .................................................................................................... 5

I.     Plaintiffs are likely to succeed on their claim that Georgia's citizenship mismatch practices unduly burden the fundamental right to vote. ................ 5

       A.    Defendant Kemp failed to address the burden on voters who submit proof of citizenship with their voter registration applications. ....................................................................................... 6

       B.    Defendant Kemp's assertions concerning the options available for citizens who bring proof of their citizenship to the polls are inconsistent with his training materials and voters' experiences. ........ 9

       C.    Defendant Kemp failed to identify any legitimate state interest that is advanced by the citizenship verification protocol. ................. 12

       D.    Plaintiffs' claims are not barred by the doctrine of laches. ............... 12

II.    The Plaintiffs will suffer irreparable harm absent the requested relief and Defendant Kemp will not be harmed by it. ................................................. 14

CONCLUSION ................................................................................................ 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Fulani v. Hogsett*, 917 F.2d 1028 (7th Cir. 1990) .................................................. 13

*Marshall v. Meadows*, 921 F. Supp 1490 (E.D. Va. 1996) ................................... 13

*Perry v. Judd*, 471 Fed. Appx. 219 (4th Cir. 2012) ............................................... 13

*Soules v. Kawaians for Nukolii Campaign Committee*, 849 F. 2d 1176
   (9th Cir. 1988) .................................................................................................... 13

**Statutes and Rules**

O.C.G.A § 21-2-216(g).................................................................................. *passim*

O.C.G.A. § 21-2-224(a) ........................................................................................ 7

## PRELIMINARY STATEMENT

Plaintiffs request the following narrowly tailored relief to ensure that eligible Georgian voters with pending citizenship mismatches, approximately 3,143 as of the July 2018 pending list, are allowed to vote if they bring the required proof to their polling location and are aware of their options.

If poll managers may confirm already that the applicant presented one of the forms of acceptable proof of citizenship and ID, and mark provisional ballots to be counted without any further action, as Defendant Kemp asserts, there is no reason the applicant should not be permitted to vote a regular ballot.  Plaintiffs thus request that the Court direct the Georgia Secretary of State's Office to allow county election officials to permit eligible voters who registered to vote, but who are inaccurately flagged as non-citizens, to vote a regular ballot by furnishing proof of citizenship to poll workers or deputy registrars.

Because statements made by Defendant Kemp, including on his website, concerning what applicants with pending citizenship mismatches need to do to vote are misleading and may cause confusion, Plaintiffs also request that the Court direct notice as follows:

- that Defendant Kemp  update the "Information for Pending Voters" on the Secretary of State's website so that it provides clear instructions and guidance to voters in pending status and conforms to the October 23 Bulletin;

- direct the Defendant to direct all county registrars, deputy registrars, poll managers and poll workers to review Mr. Harvey's October 23, 2018 bulletin and that copies of the bulletin be available at each polling location, including at the check-in stations; and

- direct the Defendant to issue a press release accurately describing this interim relief, the updated information for pending applicants on the Secretary of State's website and whom pending applicants should contact if they have any additional questions or concerns.

Defendant's Kemp's opposition (Doc. 24-2) ("Opp.") is based on three faulty premises: (1) the 2017 settlement agreement applied to a citizenship verification procedure which Defendant now contends is being implemented pursuant to O.C.G.A. § 21-2-216(g)(7)—a law which Defendant agreed was not being implemented at the time of the prior settlement agreement and was expressly exempted from the terms of the agreement; (2) individuals flagged for a signature mismatch have not yet submitted satisfactory proof of citizenship to the board of registrars; and (3) since 2017, Defendant Kemp has had in place a fully-implemented policy that allows voters to show proof of citizenship at the polls and vote regardless of whether a deputy registrar is present.

First, the lawsuit settled in the agreement Defendant Kemp relies on challenged Defendant Kemp's previous administrative practice of requiring information on voter registration applications to match exactly information maintained by DDS or SSA. Subsequently, Georgia passed HB 268, which

2

codified Secretary Kemp's procedure for verifying driver's license and social

security numbers.  HB 268, however, does not require Defendant Kemp to match

the information on voter registration applications with citizenship records

maintained by DDS.  Rather, Defendant now contends that the citizenship

verification procedure at issue here is an implementation of Georgia's

documentary proof of citizenship statute, O.C.G.A. section 21-2-216(g)(7); (*see*

Opp. 1-2), which had not been implemented at the time of the previous suit and

was not the subject of the previous agreement.  Indeed, the settlement agreement

stated explicitly that it was "not intended to limit in any way or waive any of the

parties' rights with respect to the implementation of O.C.G.A section 21-2-216(g)

in the future, including any rights the Plaintiffs may have to challenge the statute or

its implementation under Georgia or federal law."  Harvey Decl. Ex. A at 2.

Second, Defendant Kemp assiduously ignores in his Opposition the fact that

Georgia election officials are routinely relying on outdated DDS citizenship

records to place individuals in pending status despite the fact that Defendant Kemp

is aware that many newly naturalized citizens submit proof of citizenship already

with their applications.  (*See* Supplemental Declaration of Helen Butler, ("Supp.

Butler Decl.") ¶¶ 4-7, Ex. F.)  Plaintiff ProGeorgia alone has identified 426

individuals who registered at naturalized ceremonies—where the practice is to

attach proof of citizenship to the registration—who are still on the pending list. There is no reason that these voters should be required to show their proof of citizenship a second time. *See* O.C.G.A. § 21-2-216(g)(4)( once an applicant has produced satisfactory proof of citizenship to the board of registrars she "shall not" be required to submit that proof to that or any other county as long as the applicant remains continuously registered to vote in the Georgia).

Third, Defendant Kemp asserts that since 2016, Georgia has offered voters four different ways to resolve citizenship mismatches at their polling location. (Opp. 14-15.) Although these different ways are outlined in an October 23 bulletin[1]—Defendant has offered no evidence that county election officials for this cycle were given any training whatsoever on the procedures outlined in the Opposition before October 23, 2018—8 days into early voting—when a bulletin was simply posted to an online board for election officials. In fact, the 2018 poll worker manual does not include these options in its instructions regarding voters with citizenship mismatches, despite the fact that poll workers are generally the first person a voter will show ID to in the polling place. And Defendant Kemp's

---

1. Defendant Kemp has provided Plaintiffs with a copy of the October 23 bulletin, which is attached as Ex. A.

website simply states on its page for "pending" voters:  "For the November 6, 2018 election, you will need to show the proof of citizenship to a deputy registrar."[2]

This is borne out by the experience of Yotam Oren, a recently naturalized United States citizen.  He showed up at his Fulton County polling location to vote on October 16, 2018, there was no deputy registrar present to resolve his citizenship mismatch; the poll manager did not send his proof of citizenship to a deputy registrar who immediately moved him into active voting status; and he was not offered the opportunity to cast a provisional ballot that would be counted as vote without any further action required of him.  (Declaration of Yotam Oren ("Oren Decl."), Ex. B.)

## ARGUMENT

### I.    Plaintiffs are likely to succeed on their claim that Georgia's citizenship mismatch practices unduly burden the fundamental right to vote.

Defendant Kemp's verification practices have severely burdened the right to vote of eligible Georgians who have been inaccurately flagged as non-citizens without advancing any state interest:  (1) by placing newly naturalized U.S. citizens into pending status even when they submit documentary proof of citizenship because of an automated system that relies on outdated DDS records;

---

2.  Information for Pending Voters, Georgia Secretary of State, http://sos.ga.gov/index.php/general/information_for_pending_voters.

and (2) by placing needless hurdles in front of voters when they bring documentary proof of citizenship with them to vote.

The Opposition argues that there is no burden at all because there are five ways for eligible Georgian citizens flagged by the verification procedure as non-citizens to cure the mismatch. (Opp. 13-16.) But Defendant Kemp's account of the options available options is inconsistent with the actual experience of voters and the prior guidance he has given election workers for this election.

### A. Defendant Kemp failed to address the burden on voters who submit proof of citizenship with their voter registration applications.

Defendant Kemp ignores that applicants who submit documentary proof of their citizenship with their voter registration applications should not be placed into pending status in the first place. *See* Declaration of Harvey Soto (Doc. 17-12) ¶¶ 6-7; Declaration of Maria del Rosario Palacios (Doc. 17-13) ¶¶ 5-9;[3] Supp. Butler Decl. ¶¶ 4-7; Oren Decl. ¶¶ 4-7; *see also* O.C.G.A. Section 21-2-216(g)(4).

---

3. Defendant Kemp does not dispute these accounts from voters who submitted documentary proof of citizenship with their applications and puts forward no evidence to the contrary. However, he inaccurately states in footnote 3 that Mr. Barreto and Ms. Maria Rosario Palacios "provided the citizenship documentation requested after receiving letter notification." Opp. at 18, n.3. In fact, they both provided the citizenship document with their initial applications.

Given Plaintiff ProGeorgia's experience, Plaintiffs have been able to identify the tangible impact of this fundamental failure of the registration process. ProGeorgia has well-developed procedures to ensure that the new Americans it registers at naturalization ceremonies routinely include copies of their naturalization certificates with their applications. *See* Declaration of Nick Marshall ("Marshall Decl."), Ex. C ( ¶¶ 6-14). Yet, based on the July 4, 2018 pending list, ProGeorgia has identified approximately 426 citizens whom it assisted in registering at a naturalization ceremony who were flagged as a potential non-citizen, placed into pending status, and remain in pending status. *Id.* ¶ 28. At least 416 of those individuals have registered since July 1, 2017, the effective date of HB 268. *Id.* ¶ 30.[4]

The only evidence of training on this issue that Defendants put forward is a single sentence in a training slide: "Also, check to see if a copy of identification or citizenship documentation was included the application. . . . These documents may also be used to overcome verification issues." Harvey Decl., Attach. E. But this presentation was given on October 18, 2018, Harvey Decl. ¶ 22; *see also* Attach. E, more than a week after voter registration closed in Georgia, O.C.G.A. § 21-2-

---

[4]   Of these 416 voters, 3 (0.7%) are American Indian or Alaskan Native, 152 (36.5%) are Asian American or Pacific Islander, 116 (27.9%) are Black, 58 (13.9%) are Hispanic, 17 (4.1%) are of another race, 9 (2.2%) did not mark their race, and 61 (14.7%) are White. *Id.* ¶ 30.

224(a), and two days after Plaintiffs filed their initial complaint in this case. (Doc. 1). Indeed, this instruction was issued three months after Plaintiffs alerting Secretary Kemp to this problem. S*ee* Letter dated July 18, 2018 to Honorable Brian P. Kemp, Ex. D. Furthermore, the permissive language of this slide is inconsistent with the mandatory language in O.C.G.A. Section 21-2-216(g)(4) and (6) stating that registrars are required to indicate on the voter's record that he or she produced satisfactory proof of citizenship and the voter shall not be required to produce it again as long the voter remains continuously registered in Georgia.

This October 18 guidance created after the registration deadline for the November 2018 election is insufficient to remedy the imminent harm. Diana Cofield—a deputy registrar in Troup County for approximately ten years until August 28, 2018, who herself checked for naturalization documents when there was a citizenship mismatch—has no recollection of guidance suggesting that officials check initial application documents for proof of citizenship after a citizenship mismatch appears in the Enet system. Declaration of Diana Cofield, Ex. E ¶ 16. All evidence points in one direction: Georgia election officials have routinely placed applicants into pending status whenever theres is "a mismatch of citizenship status" based on the DDS records, regardless of whether proof of citizenship was already submitted. (Opp. at 17-18, n. 2)

**B.    Defendant Kemp's assertions concerning the options available for citizens who bring proof of their citizenship to the polls are inconsistent with his training materials and voters' experiences.**

Defendant Kemp also failed to adequately address the burden on voters with pending citizenship mismatches who attempt to resolve the mismatch at the polls will face, especially in light of misleading information.  The primary evidence Defendant Kemp puts forward in support of his position is a bulletin issued on October 23, 2018. Harvey Decl. ¶¶ 23-26.[5] This bulletin is a step forward in solving some of the problems. But there is little to no evidence that the procedures in the bulletin were actually in place prior to October 23, nor is there any evidence that adequate training has been provided to ensure these policies are being followed now.[6]

---

6. Mr. Harvey's apparent confusion about the procedures he put into place to address citizenship mismatches further demonstrates that election officials have not been trained adequately on the procedures.  In particular, Mr. Harvey incorrectly attests that pursuant to the settlement agreement, options 1-4 were in place for the November 2016 election, Harvey Decl. ¶ 18, when, in fact, eligible Georgians were only able to vote if they provided proof of citizenship "and a deputy registrar [was] available to review the proof of citizenship." Harvey Decl. Attach. A, Ex. 5. Otherwise, they were required to cast a provisional ballot and provide proof of citizenship after voting to the county registrar. *Id.* Mr. Harvey also attests that the only addition made by his October 23 memorandum was the option to cast a provisional ballot and then fax, email, or text their proof of citizenship before the Friday following Election Day. In fact, this option was supposed to be offered in 2016. *Id.* at 3.

Defendant offered no evidence of any trainings, memoranda, or any other material implementing these procedures whatsoever during the current election cycle before October 23, 2018, when, 8 days into early voting, the bulletin was simply posted to an online bulletin board for election officials. *See id* ¶ 23. To the contrary, current materials discussing pending voters with citizenship mismatches paint a different picture altogether. The 2018 poll worker manual does not include options 3 (electronically submitting proof of citizenship to a deputy registrar from the polls) or option 4 (provisional ballot to be counted based on poll manager's approval of documentary proof of citizenship).[7] Nor does it include any information regarding how citizens may text, email, or fax their proof of citizenship to the registrar after casting a provisional ballot. Similarly, Defendant Kemp's website page for "pending voters" instructs those with citizenship mismatches only as follows: "For the November 6, 2018 election, you will need to show the proof of citizenship to a deputy registrar."[8]

The experience of voters at the polls is also inconsistent with the October 23 bulletin. Yotam Oren's experience at the polls in Fulton County on October 16,

---

7. *See, generally*, State of Georgia Poll Worker Manual (2018), *available at* https://georgiapollworkers.sos.ga.gov/Shared%20Documents/Georgia%20Poll%20Worker%20Training%20Manual.pdf.
8. Information for Pending Voters, Georgia Secretary of State, http://sos.ga.gov/index.php/general/information_for_pending_voters.

2018, provides an example of the hoops new Americans have to jump through in practice when seeking to cast a ballot. *See* Oren Decl. Mr. Oren believes he submitted his naturalization certification with his registration application, but he was nonetheless placed in pending status. *Id.* ¶¶ 4-7, 9.

On October 16, 2018, when he presented his passport to verify his citizenship at the Fulton County early voting location, no deputy registrar was present to review it. *Id.* ¶¶ 12-13. Mr. Oren waited while an official sought several times to reach someone who could approve his proof of citizenship to enable him to vote. *Id.* ¶¶ 14-15. He left the poll when the poll worker was unable to contact by phone the sole person who could apparently register him to vote. *Id.* ¶¶ 16-17. He was not offered a provisional ballot that would be marked by the poll manager to be counted as a vote without any further action required by him. *Id.* ¶ 18. In fact, he was not offered a provisional ballot at all.[9]  Mr. Oren's experience confirms that the practice in this election has not reflected the procedures laid out in the belated October 23, 2018 bulletin.

---

9. On October 17, Mr. Oren called the registrar's office and was instructed to go back to his polling place, show his proof of citizenship, and ask the staff to call Pamela Coleman to approve his proof of citizenship. *Id.* ¶ 19-21. He did as instructed and was finally permitted to vote. *Id.* ¶ 22-28.  When he called the registrar's office, he was not offered the option to text, email, or fax his proof of citizenship. Mr. Oren's experience also contradicts Mr. Harvey's testimony suggesting a deputy registrar is present at "all polling sites" in Fulton County. Harvey Decl. ¶ 15.

**C.    Defendant Kemp failed to identify any legitimate state interest that is advanced by the citizenship verification protocol.**

The Opposition argues that the citizenship verification procedure is necessary to advance Georgia's interest "in ensuring that its voters are citizens of the United States." (Opp. 13.) But Defendant Kemp fails to explain how requiring applicants who submit proof of citizenship with their applications to submit the same documents again advances this interest. (Plaintiffs' Mem. 19-20.) Nor does he explain how this interest is served by requiring voters whose proof of citizenship is approved by poll managers to vote a provisional rather than regular ballot.

**D.    Plaintiffs' claims are not barred by the doctrine of laches.**

The Opposition argues that Plaintiffs' claims are barred by the doctrine of laches, based primarily on the February 2017 settlement agreement that certain of the Plaintiffs and Defendant Kemp entered concerning a previous lawsuit concerning Defendant Kemp's prior exact match administrative procedure.

As noted above, the settlement agreement argument is a red herring because any implementation of O.C.G.A. section 21-2-216(g) was expressly exempted from the settlement agreement and was not being implemented at the time of that agreement. The prior lawsuit did not involve the facts alleged here, which include

Defendant Kemp's failure to ensure that applicants who submit documentary proof of citizenship are fully registered the first time.

The cases Defendant relies on to argue that Plaintiffs' claims are barred by laches are inapposite because, unlike here, the plaintiffs in those cases either sought dramatic relief that would affect the state's ability to conduct the election or waited until after the challenged action was taken before commencing litigation. *See Perry v. Judd*, 471 Fed. Appx. 219, 220 (4th Cir. 2012) (presidential candidates asked the court to either add the candidates' names to primary ballot or enjoin Virginia Board of Elections from ordering, printing, or mailing ballots); *Marshall v. Meadows*, 921 F. Supp 1490, 1491 (E.D. Va. 1996) (plaintiffs asked the court to declare Virginia's open primary law unconstitutional, which would have necessitated legislation and implementation of a new voting system); *Fulani v. Hogsett*, 917 F.2d 1028, 1031 (7th Cir. 1990) (plaintiff third-party candidate sought to remove Democratic and Republican candidates from Indiana's general election ballot after ballots had already been printed); *Soules v. Kawaians for Nukolii Campaign Committee*, 849 F. 2d 1176, 1180 (9th Cir. 1988) (plaintiffs sought to invalidate an election after the votes had been counted already).

Plaintiffs, by contrast, seek limited relief, namely, that the Court direct Defendant Kemp to (1) permit poll workers, who are already permitted to mark

provisional ballots as valid upon presentation of proof of citizenship documentation, to provide voters regular ballots on the same basis; and (2) provide notice and training concerning the procedures being followed. Since Plaintiffs are primarily seeking to ensure that voters are not unduly burdened by Defendant's errors and omissions  in alleged current practice, there is no *Purcell* or laches problem presented here.

## II.    The Plaintiffs will suffer irreparable harm absent the requested relief and Defendant Kemp will not be harmed by it.

The Opposition argues that Plaintiffs have failed to identify any individual voter who has been disenfranchised as a result of the citizenship verification procedure (Opp. 17-20), but the harm Plaintiffs identify is far from speculative. (Plaintiffs' Mem. 23-24.) Indeed, Plaintiff ProGeorgia has identified 426 individuals it helped register to vote who still have a citizenship mismatch. Marshall Decl. ¶ 26-28. The vast majority of these individuals submitted proof of citizenship with their registration. These numbers taken together with Mr. Oren's experience demonstrate a very substantial risk of disenfranchisement.

Defendant Kemp has significantly increased the risk that individual voters will be disenfranchised as a result of the citizenship verification procedure. Since this issue has caught the public's attention during his high profile race for

Governor, Defendant Kemp has repeatedly stated that voters in pending status only need to show photo ID to vote.[10]

Nor did Plaintiffs, as Defendant argues, delay in bringing this action. (Opp. 20-24) As discussed at length above, this case is based on new facts that Plaintiffs have developed over time. Individual stories were not *necessarily* indicative of a policy problem until the Plaintiffs gathered sufficient data to identify a pattern

Finally, Defendant Kemp will not be harmed by providing notice of the procedures he asserts are being followed already or by allowing already trained poll managers to provide regular ballots to voters who bring documentary proof of citizenship to the polls.

## CONCLUSION

For the foregoing reasons and the reasons set forth in Plaintiffs' memorandum, Plaintiffs respectfully request that the Court enter an order granting their motion for a preliminary injunction and such further relief as it deems just and proper.

---

10. *See, e.g.*, Curt Yoemans, "Brian Kemp addresses voter registration flap," Gwinnett Daily Post (October 12, 2018) ("Yoemans"), https://www.gwinnettdailypost.com/local/brian-kemp-addresses-voter-registration-flap/article_43ba1f6e-71b1-52d5-b735-d67d12a0085e.html.

15

Dated: October 29, 2018  Respectfully submitted,

By: */s/ Bryan L. Sells*
   Bryan L. Sells
   Georgia Bar No. 635562
   The Law Office of Bryan L. Sells, LLC
   Post Office Box 5493
   Atlanta, Georgia 31107-0493
   Telephone: (404) 480-4212
   bryan@bryansellslaw.com

   Kristen Clarke, Esq. (*pro hac vice to be filed)
   Jon Greenbaum, Esq. (*pro hac vice)
   Ezra D. Rosenberg, Esq. (*pro hac vice)
   Julie Houk, Esq. (*pro hac vice)
   John Powers, Esq. (*pro hac vice)
   kclarke@lawyerscommittee.org
   jgreenbaum@lawyerscommittee.org
   erosenberg@lawyerscommittee.org
   jhouk@lawyerscommittee.org
   jpowers@lawyerscommittee.org
   Lawyers' Committee for Civil Rights Under Law
   1401 New York Avenue NW, Suite 400
   Washington, D.C. 20005
   Telephone:  (202) 662-8600
   Facsimile:  (202) 783-0857

   Vilia Hayes, Esq. (*pro hac vice)
   Gregory Farrell, Esq. (*pro hac vice)
   Hughes Hubbard & Reed LLP
   One Battery Park Plaza
   New York, New York 10004-1482
   Telephone:  (212) 837-6000
   Facsimile:  (212) 422-4726

   Danielle Lang, Esq. (*pro hac vice)
   Mark Gaber (*pro hac vice)
   J. Gerald Hebert (*pro hac vice)

16

dlang@campaignlegalcenter.org
MGaber@campaignlegalcenter.org
GHebert@campaignlegalcenter.org
Campaign Legal Center
1411 K Street NW, Suite 1400
Washington, DC 20005
Telephone:          (202) 736-2200
Facsimile:          (202) 736-2222

Phi Nguyen
Georgia Bar No. 578019
Asian Americans Advancing Justice – Atlanta
5680 Oakbrook Parkway, Suite 148
Norcross, Georgia 30093
pnguyen@advancingjustice-atlanta.org
Telephone: (770) 818-6147

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 29th day of October 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

Cristina M. Correia
Senior Assistant Attorney General
Georgia Department of Law
40 Capitol Square, SW Atlanta, GA 30334
404-656-7063
FAX: 404-651-9325
ccorreia@law.ga.gov

*/s/ Bryan L. Sells*
Bryan L. Sells