UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GEORGIA COALITION FOR THE PEOPLE'S AGENDA, as an organization; et al. <br><br> Plaintiffs, <br><br> v. <br><br> BRAD RAFFENSPERGER, <br><br><br> Defendant. | Civil Action No.: 1:18-cv-04727-ER |

**PLAINTIFFS' INITIAL DISCLOSURES**

Plaintiffs submit their Initial Disclosures pursuant to Fed. R. Civ. Pro. 26(a) and Local Rule 26, as follows:

*(1) State precisely the classification of the cause of action being filed, a brief factual outline of the case including plaintiff's contentions as to what defendant did or failed to do, and a succinct statement of the legal issues in the case.*

**Causes of Action:**

This is a voting rights lawsuit brought by Plaintiffs under Section 2 of the Voting Rights Act (52 U.S.C. § 10301); Section 8 of the National Voter

Registration Act of 1993 (52 U.S.C. § 20507(a)); and the First and Fourteenth Amendments to the United States Constitution (burden on the fundamental right vote).

**Brief Factual Outline of the Case and Plaintiffs' Contentions:**

In 2017, Georgia Governor Nathan Deal signed into law House Bill 268, which codified a voter registration database matching protocol that had been previously shown to disproportionately and negatively impact the ability of voting-eligible African-American, Latino and Asian-American applicants to register to vote.

The protocol, codified by HB 268, and implemented by Georgia's Secretary of State, requires county registrars to enter information from a voter registration form into Georgia's statewide voter registration system known as "Enet."

That information is then matched against records on file with the Georgia Department of Drivers Services (DDS) or Social Security Administration (SSA). If the information entered into "Enet" does not match the applicant's identity data on file with DDS or SSA, the application is placed in "pending" status. If the "pending" status is not resolved within 26 months, the applicant is purged from the registration list. The protocol imposes no obligation on county registrars to check for data entry errors, errors in the underlying databases or other problems that routinely result in erroneous "no match" results.

2

The Social Security Administration's, "Help America Vote Verification" ("HAVV") database, which is used to match voter registration form data when the applicant uses the last four digits of their Social Security number on the registration form, is known to routinely produce false "no-match" and inconsistent results. The error-prone nature of the SSA HAVV matching process was the subject of an audit report by the office of the SSA's Inspector General which found, among other things, that the "HAVV program provided the States with responses that may have prevented eligible individuals from registering to vote and allowed ineligible individuals to vote."

As a result, even applicants who submit facially complete and entirely accurate forms are routinely denied active registration status or face substantial delays in the processing of their applications due to typographical errors, inaccuracies or discrepancies in the databases or other problems inherent to the matching protocols that are out of the control of the applicant to correct.

Applicants are also put into pending status if the DDS records flag the applicant as a potential non-citizen. United States citizens are routinely erroneously flagged as non-citizens because the system relies upon citizenship data in DDS records that are not automatically updated to reflect that an applicant has attained U.S. citizenship after having previously obtained a driver's license or state ID as a non-citizen.

HB 268 does not require that county registrars examine whether documentary proof of citizenship was submitted with the registration before placing an applicant in pending status, despite this known issue caused by outdated DDS citizenship data.

Defendant admits in the Answer to the First Amended Complaint that county registrars placed voting-eligible Georgia citizens in pending status and sent notices demanding they provide documentary proof of citizenship even when the applicants included their naturalization certificates with their initial registration forms.

HB 268 was introduced in 2017 on the heels of the settlement of a lawsuit filed the previous year, which challenged a substantially similar voter registration database matching protocol that had been implemented administratively by the former Secretary of State, Brian Kemp.

At the time HB 268 was signed into law, Governor Deal, the Georgia General Assembly, and Brian Kemp were all on notice that HB 268 would impose severe and unjustified burdens on applicants' right to vote and have a severe discriminatory impact on African-American, Latino and Asian-American applicants.

Since the enactment of HB 268, the voter registration verification process and its implementation by the Georgia Secretary of State's Office have continued to produce a high rate of erroneous "no-matches" that

disproportionately impacts African-American, Latino and Asian-American applicants.

Data produced by the Georgia Secretary of State's Office in July 2018 indicated that approximately 51,111 voter registration applicants were in "pending" status for reasons related to the HB 268 matching requirement, i.e., the purported failure to verify against DDS or SSA identity or citizenship data.

Approximately 80.15% of those pending applications were submitted by African-American, Latino and Asian-American applicants. Only 9.83% of the "pending" for failure to verify applications were submitted by applicants identifying as White.

HB 268 places the burden upon the applicant to then cure the "no-match" result within 26 months. If this deadline is not met, or the application is cancelled, the applicant must start the voter registration application process anew.

According to Defendant, applications will begin to be cancelled under HB 268 on and after April 21, 2020 – less than six months prior to the voter registration deadline for the 2020 Presidential election.  Thus, absent the Court enjoining enforcement of HB 268 prior to April 21, 2020, there is a substantial risk that thousands of voter registration applicants on the "pending list" – a majority of whom are African-American, Latino or Asian-American applicants –

will be denied active voter registration status and will be disenfranchised in the 2020 Presidential election.

Plaintiffs contend, *inter alia*, that HB 268 and its implementation by the Georgia Secretary of State violates Section 2 of the VRA by imposing qualifications or prerequisites to voting that results in the denial or abridgement of the right to vote of Georgia citizens on account of their race or color.

Plaintiffs also contend, *inter alia*, that HB 268 and its implementation by the Georgia Secretary of State violates the First and Fourteenth Amendments of the United States Constitution by imposing severe burdens on the right to vote of eligible Georgians which are not justified by any rational or compelling state interest.

Plaintiffs further contend that HB 268 and its implementation by the Georgia Secretary of State violates Section 8 of the National Voter Registration Act of 1993 (52 U.S.C. § 20507(a)), including by delaying or preventing eligible Georgians who have submitted timely , facially complete and accurate voter registration forms, from completing the voter registration process so that they can exercise their right vote.

Finally, Plaintiffs contend that they are entitled to injunctive and/or declaratory relief against the Georgia Secretary of State that is reasonable and just, including, but not limited to, the relief sought in the prayer of the Plaintiffs' First Amended Complaint. Discovery continuing.

6

**Succinct Statement of Legal Issues:**

(1)     Whether HB 268 and its implementation result in the denial or abridgement of the right to vote of Georgia citizens on account of their race or color in violation of Section 2;

(2)     Whether HB 268 and its implementation violate the First and Fourteenth Amendments of the United States Constitution by imposing severe burdens on the right to vote of eligible Georgians that are not justified by any rational or compelling state interest;

(3)     Whether HB 268 and its implementation violate Section 8 of the National Voter Registration Act of 1993 (52 U.S.C. § 20507(a)), including by delaying or preventing eligible Georgians from completing the voter registration process so that they can exercise their right vote; and

(4)     Whether Plaintiffs are entitled to declaratory relief, injunctive relief to enjoin enforcement of HB 268, in whole or in part, or other relief against the Defendant.

 *(2) Describe in detail all statutes, codes, regulations, legal principles, standards and customs or usages, and illustrative case law which plaintiff contends are applicable to this action.*

**(a) Applicable Statutes, Codes, Legal Principles and Standards**:

Georgia House Bill 268 (O.C.G.A. § 21-2-220.1) and other provisions of

the Georgia Elections Code, including, but not limited to: O.C.G.A. §§ 21-2-220,

and 21-2-216;

Section 2 of the Voting Rights Act of 1965 (52 U.S.C. § 10301)("VRA")

and United States Senate REP. 97-417 at 28-29 ("Senate Factors");

Section 8 of the National Voter Registration Act of 1993 (52 U.S.C. §

20507(a))("NVRA");

7

First and Fourteenth Amendments to the United States Constitution

(burden on the fundamental right to vote); and

Help America Vote Act (HAVA)(52 U.S.C. § 21083).

**(b) Illustrative Case Law:**

**(1)  Illustrative cases involving voter registration database and voter list matching protocols and proof of citizenship:**

*Morales v. Handel*, No. 1:08-CV-3172, 2008 WL 9401054 (N.D. Ga. Oct. 27, 2008); *Georgia State Conference of the NAACP v. Brian Kemp*, Civil Action No. 2:16-cv-00219-WCO (N.D. GA); *Project Vote v. Brian Kemp,* Civil Action No. 1:16-cv-02445-WSD (N.D. GA); *Washington Association of Churches v. Reed*, 492 F.Supp.2d 1265 (W.D. Wa. 2006); *Fla. State Conference of the NAACP v. Browning*, 569 F. Supp. 2d 1237 (N.D. Fla. 2008); *Arcia v. Florida Secretary of State*, 772 F.3d 1335 (11th Cir. 2014); *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013); *Fish v. Kobach*, 309 F.Supp.3d 1048 (D. Kan. 2018); and *League of Women Voters of the United States, et al. v. Newby,* 838 F.3d 1 (D.C. Cir. 2016).

**(2)  Illustrative cases involving the *Anderson-Burdick* framework and claims involving the burden on the fundamental right to vote:**

*Burdick v. Takushi*, 504 U.S. 428, 433 (1992); *Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886); *Harper v. Va. State Bd. of Elections,* 383 U.S. 663 (1966); *Wesberry v. Sanders,* 376 U.S. 1 (1964); *North Carolina State Conference of NAACP v. McCrory*, 831 F.3d 204

(4th Cir. 2016), *cert. denied, North Carolina v. North Carolina State Conference of NAACP,* --U.S.--, 137 S. Ct. 1399 (2017); *League of Women Voters of Fla., Inc., v. Detzner*, 314 F.Supp.3d 1205 (N.D. Fla. 2018); *Green Party of Georgia v. Kemp*, 171 F.Supp.3d 1340 (N.D. Ga. 2016); *League of Women Voters v. Brunner,* 548 F.3d 463, 477 (6th Cir. 2008); *United States v. McLeod*, 385 F.2d 734, 740 (5th Cir. 1967); *United States v. State of Louisiana*, 225 F. Supp. 353 (E.D. La. 1963), *aff'd* 380 U.S. 145 (1965); *Bishop v. Lomenzo*, 350 F. Supp. 576 (E.D.N.Y. 1972).

**(3) Illustrative cases involving claims under Section 2 of the VRA:**

*Thornburg v. Gingles*, 478 U.S. 30 (1986); *Johnson v. Governor of Fla*., 405 F.3d 1214, 1228 (11th Cir. 2005), *cert. denied sub nom, Johnson v. Bush*, 546 U.S. 1015 (2005); *Burton v. City of Belle Glade*, 178 F.3d 1175, 1196-97 (11th Cir. 1999); *Harris v. Siegelman,* 695 F. Supp. 517 (M.D. Ala. 1988).

**(4) Illustrative cases involving claims under the NVRA:**

*Arizona v. Inter Tribal Council of Arizona, Inc*., 570 U.S. 1 (2013); *Charles H. Wesley Education Foundation v. Cox*, 408 F.3d 1349 (11th Cir. 2005); *Fish v. Kobach*, 309 F.Supp.3d 1048 (D. Kan. 2018); *Georgia State Conference NAACP v. Georgia*, Civil Action No. 2:16-cv-00219-WCO, 2017 WL 9435558 (N.D. Ga. 2017).

The Plaintiffs note that this list of illustrative authorities is not exhaustive, and anticipate the need to rely upon additional authority as this litigation progresses.

*(3) Provide the name and, if known, the address and telephone number of each individual likely to have discoverable information that you may use to support your claims or defenses, unless solely for impeachment, identifying the subjects of the information. (Attach witness list to Initial Disclosures as Attachment A.)*

See Attachment A. Discovery continuing.

*(4) Provide the name of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence. For all experts described in Fed. R. Civ. P. 26(a)(2)(B), provide a separate written report satisfying the provisions of that rule. (Attach expert witness list and written reports to Responses to Initial Disclosures as Attachment B.)*

Plaintiffs note that disclosure of expert witness information is premature at this time. Plaintiffs anticipate making timely expert witness disclosures pursuant to F.R.C.P. 26, the local rules and the pretrial deadlines established by the Court. See Attachment B. Discovery continuing.

*(5) Provide a copy of, or a description by category and location of, all documents, data compilations or other electronically stored information, and tangible things in your possession, custody, or control that you may use to support your claims or defenses unless solely for impeachment, identifying the subjects of the information. (Attach document list and descriptions to Initial Disclosures as Attachment C.)*

*See* Attachment C. Discovery continuing.

*(6) In the space provided below, provide a computation of any category of damages claimed by you. In addition, include a copy of, or describe by category and location of, the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered, making such documents or evidentiary material available for inspection and copying as under*

*Fed.R.Civ.P. 34. (Attach any copies and descriptions to Initial Disclosures as Attachment D.)*

Plaintiffs have not alleged monetary damage claims in the Complaint and Amended Complaint. Should the Plaintiffs prevail on their claims, they will seek to recover reasonable attorney's fees and costs associated with the litigation. The amount of such fees and costs increase daily and will be determined according to proof.

*(7) Attach for inspection and copying as under Fed.R.Civ.P. 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or to indemnify or reimburse for payments made to satisfy the judgment. (Attach copy of insurance agreement to Initial Disclosures as Attachment E.)*

Plaintiffs do not currently have any responsive documents in their possession, custody or control.  Plaintiffs further note that any applicable insurance agreements would be in the possession of the Defendant.

*(8) Disclose the full name, address, and telephone number of all persons or legal entities who have a subrogation interest in the cause of action set forth in plaintiffs' cause of action and state the basis and extent of such interest.*

Unknown to Plaintiffs at this time.

Dated: January 25, 2019          Respectfully submitted,

By: /s/ Bryan L. Sells Bryan L. Sells
Georgia Bar No. 635562
The Law Office of Bryan L. Sells, LLC
Post Office Box 5493
Atlanta, Georgia 31107-0493
Telephone: (404) 480-4212
bryan@bryansellslaw.com

Kristen Clarke, Esq. (*pro hac vice to be filed)
Jon Greenbaum, Esq. (*pro hac vice)
Ezra D. Rosenberg, Esq. (*pro hac vice)
Julie Houk, Esq. (*pro hac vice)
John Powers, Esq. (*pro hac vice)
kclarke@lawyerscommittee.org

jgreenbaum@lawyerscommittee.org
erosenberg@lawyerscommittee.org
jhouk@lawyerscommittee.org
jpowers@lawyerscommittee.org
Lawyers' Committee for Civil Rights Under
Law 1401 New York Avenue NW, Suite 400
Washington, D.C. 20005
Telephone: (202) 662-8600
Facsimile: (202) 783-0857

Vilia Hayes, Esq. (*pro hac vice)
Gregory Farrell, Esq. (*pro hac vice)
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

Danielle Lang, Esq. (*pro hac vice)
Mark Gaber (*pro hac vice)
J. Gerald Hebert (*pro hac vice)
dlang@campaignlegalcenter.org
MGaber@campaignlegalcenter.org
GHebert@campaignlegalcenter.org
Campaign Legal Center
1411 K Street NW, Suite 1400
Washington, DC 20005
Telephone: (202) 736-2200
Facsimile: (202) 736-2222

Phi Nguyen
Georgia Bar No. 578019
Asian Americans Advancing Justice – Atlanta
5680 Oakbrook Parkway, Suite 148
Norcross, Georgia 30093
pnguyen@advancingjusticeatlanta.org
Telephone: (770) 818-6147

*Counsel for Plaintiffs*

12

### ATTACHMENT "A" TO PLAINTIFFS' INITIAL DISCLOSURES

*The name and, if known, the address and telephone number of each individual likely to have discoverable information that you may use to support your claims or defenses, unless solely for impeachment, identifying the subjects of the information.*

(a) **Current and former members of the Georgia Secretary of State's Office and the Director of Elections' Office, including, but not limited to:**

Brad Raffensperger; Robyn Crittenden; Brian Kemp; Chris Harvey; Candace Broce; Merritt Beaver; Ryan Germany; Holly Smith; Kevin Rayburn; and other current and former employees, agents and servants of the Georgia Secretary of State's office to be determined. Plaintiffs believe that Defendant and/or Defendant's counsel are likely to have information concerning the current addresses and telephone numbers for these individuals.

Plaintiffs are informed and believe and thereon state that the subject(s) of the information that said individuals, collectively or individually, may have knowledge of include, but may not be limited to: Georgia's existing and/or previous voter registration systems; customs, policies, practices, training and supervision concerning Georgia's existing or previous voter registration systems; data, statistics and/or other evidence concerning active and inactive voters as well as pending, cancelled and rejected voter registration applicants; methodologies, algorithms, procedures and protocols used in the implementation of HB 268 and in the previous administrative "exact match" voter registration

protocols; laws, administrative rules, regulations, usages and customs concerning voter registration in Georgia; training, manuals, PowerPoint presentations and other materials provided to and/or shown to County election officials and/or their staff concerning voter registration, including, but not limited to, the Enet voter registration system, database matching processes, the processing of online, paper and mailed-in voter registration applications and other topics related to voter registration; demographic, socio-economic, statistical and other data concerning Georgia's voter registration applicants and registered voters; the negative and disproportionate impact HB 268 and the Georgia Secretary of State's previous administrative "exact match" voter registration protocols had on African American, Latino and Asian American voter registration applicants; press releases, statements, memoranda or other documents issued by Brian Kemp and/or his staff concerning HB 268 and the prior administrative "exact match" voter registration protocols; information for pending voters posted on the Georgia Secretary of State's website prior to and after the commencement of this litigation; the administration of the 2018 Georgia gubernatorial election and Georgia's voter registration processes by Brian Kemp while he was running as a gubernatorial candidate; the current and previous litigation concerning Georgia's voter registration systems and database matching requirements; the history of discrimination in Georgia against African American, Latino and Asian American voters; and other subject(s) of information to be determined.  Chris Harvey,

Director of Elections, should also have information concerning the declaration he executed in opposition to Plaintiffs' motion for a preliminary injunction in this litigation.  Discovery continuing.

**(b)** **Nathan Deal, former Governor of the State of Georgia, and current and former members of the Georgia General Assembly who sponsored or otherwise supported passage of HB 268, including, but not limited to:**

Barry Fleming, 401-H Coverdell Legislative Office Bldg., 18 Capitol Square SW, Atlanta, GA 30334, Telephone: 404.656.0152; Jon Burns, 338 State Capitol, Atlanta, GA 30334, Telephone: 404.656.5052; Christian Coomer, Court of Appeals of Georgia, 47 Trinity Avenue S.W., Suite 501 Atlanta, GA 30334; Telephone: 404.656.3450; Matt Hatchett, 415 State Capitol, Atlanta, GA 30334, Telephone: 404.656.5025; Ed Rynders, 218-D State Capitol, Atlanta, GA 30334, Telephone: 404.656.6801; Bruce Williamson, 415-B State Capitol, Atlanta, GA 30334, Telephone: 404.656.5024; Dean Burke, 301-A Coverdell Legislative Office Bldg., Atlanta, GA 30334; Phone: (404) 656-0040; Earl Ehrhart (Retired), last known addresses and telephone numbers: 245 State Capitol, Atlanta, GA 30334, Telephone: 404.463.2247; District Address: 5584 Black Iron Trail, Powder Springs, GA 30127, Telephone: 770.437.7536; and other Georgia House members and/or Senators to be determined.  Discovery continuing.

Plaintiffs are informed and believe and thereon state that the subject(s) of the information that said individuals, collectively or individually, may have

knowledge of include, but may not be limited to: the legislative history of HB 268; the identities of the persons responsible for drafting HB 268 and amendments to HB 268; the purpose of HB 268 and reasons for its introduction in the 2017 legislative session; committee hearings held in the Georgia House and Senate prior to the passage of HB 268; communications between the Governor, legislators, Secretary of State, Director of Elections, and their lobbyists and staff, concerning HB 268 and/or the previous voter registration database matching policies, practices, processes and protocols; the disproportionate and negative impact HB 268 and the prior administrative "exact match" voter registration protocols had upon African American, Latino and Asian American voter registration applicants; and other subject(s) of information to be determined.  Discovery continuing.

**(c) Georgia County election officials and/or staff members involved in the implementation of HB 268 and/or the administrative database matching protocol in existence prior to the enactment of HB 268, including, but not limited to:**

Richard L. Barron, Fulton County's Director of Registration & Elections 130 Peachtree Street, SW, Atlanta, Georgia 30303-3450; Telephone: 404-612-7030; Lynn Ledford, Gwinnett County Voter Registration and Elections Director, 75 Langley Drive, Lawrenceville, GA 30046; Telephone: 678-226-7210; Erica Hamilton, DeKalb County Director of Elections, 4380 Memorial Drive, Suite 300, Decatur, GA  30032-1239; Telephone: 404-298-4020; Janine

Evelar, Cobb County Director of Elections, 736 Whitlock Ave. NW, Suite 400,

Marietta GA 30064, Telephone: (770) 528-2581; Shauna Dozier, Clayton

County Director of Elections, Jonesboro Historical Courthouse, Main Floor 121

South McDonough Street Jonesboro, GA 30236; Telephone: (770) 477-3372;

Lori Wurtz, Elections Director, Hall County Georgia, 2875 Browns Bridge

Road, Lower Level, Gainesville, GA 30504; Telephone: (770) 531-6945; and

other county election officials, staff and/or county board of elections members to

be determined.

Plaintiffs are informed and believe and thereon state that the subject(s) of the

information that said individuals, collectively or individually, may have

knowledge of include, but may not be limited to: Georgia's existing and/or

previous voter registration systems; customs, policies, practices, training and

supervision concerning Georgia's existing or previous voter registration systems;

data, statistics and/or other evidence concerning active and inactive voters as

well as pending, cancelled and rejected voter registration applicants;

methodologies, algorithms, procedures and protocols used in the implementation

of HB 268 and in the previous administrative "exact match" voter registration

protocols; laws, administrative rules, regulations, usages and customs concerning

voter registration in Georgia; training, manuals, PowerPoint presentations and

other materials received from the office of the Georgia Secretary of State,

Director of Elections and/or their employees, agents and/or servants concerning

17

voter registration, including, but not limited to, the Enet voter registration system, database matching processes, the processing of online, paper and mailed-in voter registration applications and other topics related to voter registration; demographic, socio-economic, statistical and other data concerning Georgia's voter registration applicants and registered voters; the negative and disproportionate impact HB 268 and the Georgia Secretary of State's previous administrative "exact match" voter registrations protocols have on African American, Latino and Asian American voter registration applicants; communications from the Secretary of State, Director of Elections and/or their staff regarding the implementation of HB 268 and the previous administrative "exact match" processes for voter registration; the current and previous litigation concerning Georgia's voter registration systems and database matching requirements; and other subject(s) of information to be determined.  Richard Barron should also have information concerning the declaration he executed in opposition to the Plaintiffs' motion for a preliminary injunction in this litigation. Discovery continuing.

### (d) Individual voter registration applicants impacted by HB 268 and its implementation, including, but not limited to:

Phoebe Einzig-Roth, Devin Butler, Yotem Oren, Maria Palacios, Vanessa Alva, Franco Jediael Chevalier, Franklin Javier Viloria, Brian Shan and voter registration applicants who registered at naturalization ceremony voter

registration events and were moved from "pending" to "active" voter status in late October or early November 2018 after Plaintiff's counsel identified these applicants to Defendant's counsel. Mr. Oren's spouse, Emily Shingler, may also have information concerning the incident when Mr. Oren was unable to cast a ballot during early voting in Fulton County, Georgia in 2018 due to the incorrect potential non-citizen flag on his voter registration record. Plaintiffs are informed and believe and thereon state that Defendant and/or Defendant's counsel have access to these individuals' last known addresses and/or phone numbers through Enet. Plaintiffs' counsel will also exchange currently available contact information for these individuals. Discovery continuing.

**(e) Current or former principals and/or staff members of the organizational Plaintiffs, including, but not limited to:**

Helen Butler, Stephanie Cho, Jerry Gonzalez, Harvey Soto, Cheryl Lowery, Tamieka Atkins, Nicholas Marshall-Butler, Phyllis Blake, Nse Ufot, Paul Ryan, and Aisha Yaqoob.  These individuals are represented by Plaintiffs' counsel and should be contacted only through Plaintiffs' counsel.

The subject(s) of the information that said individuals, collectively or individually, may have knowledge of include, but may not be limited to: the Plaintiffs' claims in the litigation; evidence establishing that Plaintiffs have standing to bring this litigation; the negative impact, burdens and diversion of resources suffered by the Plaintiffs as a result of the enactment and

implementation of HB 268 and the previous administrative "exact match" voter registration database matching protocols adopted and implemented by the Georgia Secretary of State's office.  Discovery continuing.

## ATTACHMENT "B" TO PLAINTIFFS' INITIAL DISCLOSURES

*Provide the name of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence. For all experts described in Fed. R. Civ. P. 26(a)(2)(B), provide a separate written report satisfying the provisions of that rule.*

Plaintiffs object that it is premature to identify expert witnesses whom Plaintiffs may call at trial or to produce expert reports for trial experts. Plaintiffs will comply with all expert discovery deadlines set by the Court in this matter. Without waiving these objections, Plaintiffs note that a declaration of Dr. Michael McDonald was filed in support of Plaintiffs' motion for a preliminary injunction and is equally available to Defendant's counsel. Discovery continuing.

**ATTACHMENT "C" TO PLAINTIFFS' INITIAL DISCLOSURES**

*Provide a copy of, or a description by category and location of, all documents, data compilations or other electronically stored information, and tangible things in your possession, custody, or control that you may use to support your claims or defenses unless solely for impeachment, identifying the subjects of the information.*

1) The documents filed with the Court in *Georgia State Conference of the NAACP v. Brian Kemp,* Civil Action No. 2:16-cv-00219-WCO (N.D. GA), including, but not limited to: Plaintiffs' Complaint; Plaintiffs' emergency motion for a preliminary injunction, the declarations and exhibits filed in support of said motion; and a letter dated September 23, 2016 from Russell Willard to the Honorable William C. O'Kelley. Plaintiffs also identify the voter registration data, including voter file and pending, cancelled and rejected applicants lists produced by Defendant pursuant to the terms of the settlement entered in the action. Defendant's counsel is equally in possession, custody or control of these documents and materials.

2) The documents filed with the Court, transcript(s) of proceedings and materials disclosed to Plaintiff by Defendant in *Project Vote v. Brian Kemp,* Civil Action No. 1:16-cv-02445-WSD (N.D. GA), including, but not limited to, Plaintiffs' Complaint; Plaintiffs' emergency motion for a preliminary injunction, declarations and exhibits filed in support and in opposition thereto; deposition of S. Merritt Beaver (30(b)(6) Witness) taken on August 19, 2016; and the Court's opinion and orders dated September 20, 2016, denying Defendant Kemp's motion to dismiss and granting in part and denying in part the Plaintiff's motion for a preliminary injunction. Defendant's counsel is equally in possession, custody or control of these documents and materials.

3) The documents filed with the Court and the transcript of the hearing on Plaintiffs' emergency motion for a preliminary injunction in the instant action, *Georgia Coalition for the People's Agenda, et al., v. Brad Raffensperger,* Civil Action No. 1:18-cv-04727-ER (N.D. GA), including, but not limited to, Plaintiffs' Complaint, Plaintiffs' Amended Complaint, Defendant's Answer, Plaintiffs' emergency motion for a preliminary injunction, declarations and exhibits filed in support and in opposition thereto; and the Court's order dated November 2, 2018 granting Plaintiffs' motion for a preliminary

injunction.  Defendant's counsel is equally in possession of these documents and materials.

4) The documents and other materials filed with the Court in *Morales v. Kemp*, Civil Action No. 1:08-CV-3172 (N.D. GA). Defendant's counsel has equal access to said documents and materials via Pacer.

5) The documents and other materials filed with the Court in *League of Women Voters of the United States, et al. v. Newby*, Case No. 16-cv-236 (RJL)(D.D.C.) and *Women Voters of the United States, et al. v. Newby*, No. 16-5196 (D.C. Cir.).  Defendant's counsel has equal access to said documents and materials via Pacer.

6) United States Department of Justice Section 5 preclearance records related to Georgia's voter registration database matching protocols. Defendant and Defendant's counsel have equal access to said documents.

7) All data, statistics and records available on the Georgia Secretary of State's website concerning voter registration, election results, voter turnout, information for pending voters, press releases, a statement from Brian Kemp on "litigation threat by Lawyers' Committee" and PDF attachments to said statement and other information posted on the Georgia Secretary of State's website.  Defendant's counsel is equally in possession of these documents and materials.

8) The legislative history of HB 268, including, but not limited to, committee hearings and committee actions on the bill, floor debate and passage of the bill by the Georgia General Assembly, action on the bill by Governor Nathan Deal, recordings and the legislative record regarding the bill. Defendant's counsel has equal access to said documents and materials through the Georgia General Assembly's website and Georgia Public Television's website.

9) Media reports concerning HB 268 and the previous administrative "exact match" voter registration process, including, but not limited to: Jim Galloway, *How Exact Match 2.0 happened – by the real question is why?* Atlanta Journal Constitution (October 16, 2018); https://www.ajc.com/blog/politics/exact-match-becomes-part-highly-litigious-election-season/RgSoVk5q3hTlbKhDrixA0I/; Tyler Jett, *In Whitfield County, confusion, frustration over exact match voting law*,

Times Free Press (October 28, 2018),
https://www.timesfreepress.com/news/local/story/2018/oct/28/whitfiel
d-county/481968/; Brentin Mock, *How Dismantling the Voting Rights
Act Helped Georgia Discriminate Again*, Citylab (October 18, 2018),
https://www.citylab.com/equity/2018/10/how-dismantling-voting-
rights-act-helped-georgia-discriminate-again/572899/; Ben Nadler,
*Voting Rights Become A Flashpoint In Georgia Governor's Race*,
Associated Press (October 8, 2018),
https://apnews.com/fb011f39af3b40518b572c8cce6e906c; Stephen
Fowler, *UPDATE: Who Are The 75,000 People On Georgia's
'Pending' List?* GPB Radio News (October 23, 2018),
http://www.gpbnews.org/post/update-who-are-75000-people-georgia-s-
pending-list.  These materials are in the public domain and Defendant's
counsel has equal access to them.

10) The declarations of Brian Shan, Franklin Javier Viloria, and Franco
Jediael Chevalier which are attached hereto as Exhibits 1 through 3,
respectively, and incorporated herein by reference.

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 25th day of January 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and served a copy by electronic mail upon the following attorney of record for the defendant:

Cristina M. Correia
Senior Assistant Attorney General
Georgia Department of Law
40 Capitol Square, SW Atlanta, GA 30334
404-656-7063
FAX: 404-651-9325
ccorreia@law.ga.gov

*/s/ Bryan L. Sells*
Bryan L. Sells