**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

GEORGIA COALITION FOR THE
PEOPLES' AGENDA, INC., *et. al.*

      Plaintiffs,

v.

BRAD RAFFENSPERGER, in his
official capacity as Secretary of State
for the State of Georgia,

*Defendant*.

Civil Action No.
1:18-cv-04727-ELR

**PLAINTIFFS' MOTION TO ALTER OR AMEND JUDGMENT AND TO
RESUME OR GRANT A NEW TRIAL**

Plaintiffs respectfully move under Rule 59(e) of the Federal Rules of Civil

Procedure to alter the judgment entered by this Court with respect to claims brought

under Section 8 of the National Voter Registration Act of 1993 ("NVRA") and to

resume or grant a new trial on the merits of these claims, or grant whatever remedy

the Court finds appropriate within its equitable discretion. In the alternative,

Plaintiffs move under Rule 52(b) for the Court to amend its findings and the

1

judgment and to resume trial, grant a new trial, or grant other equitable relief on Plaintiffs' NVRA claims under Rule 59(a)(1)(B).[1]

### INTRODUCTION

On April 11, 2024, this Court ruled from the bench under Federal Rule of Civil Procedure 52(c) and found in favor of Defendant on all four counts of Plaintiffs' Third Amended Complaint, including Count Four brought under the NVRA. Tr. 754:4-755:8. Respectfully, this Court should alter or amend its judgment for the following two reasons.[2]

*First*, the Court erroneously held that naturalized citizens placed in pending for citizenship status are "registered" voters under Section 8(a)(1) of the NVRA, even though such individuals are not considered registered under Georgia law, are not able to cast a *regular* ballot without overcoming additional hurdles, and, as Defendant conceded, are not subject to the voter removal protections guaranteed to registered voters under Sections 8(a)(3), 8(b)(2), 8(c) and 8(d) of the NVRA.

*Second*, the Court erroneously concluded that Georgia's citizenship verification protocol is a uniform and nondiscriminatory program under Section

---

[1] Although Plaintiffs respectfully disagree with this Court as to its ruling dismissing Plaintiffs' Voting Rights Act and constitutional claims, those claims are not included in this motion, and are preserved for purposes of appeal.

[2] Plaintiffs note that whether Georgia's citizenship verification process violates the NVRA was not addressed by Judge Jones in *Fair Fight Action, Inc. v. Raffensperger*, 634 F. Supp. 3d 1128 (N.D. Ga. 2022), as plaintiffs in that case had not raised any claims under the NVRA.

8(b)(1) of the NVRA. As trial testimony established, Georgia's citizenship verification protocol is not applied to all applicants but is applied only to those applicants who provide a driver's license number when registering to vote. This is not uniform. The program separately violates Section 8(b)(1) because the protocol places only those applicants who hold limited-term driver's licenses, i.e., only naturalized citizens, on the pending list. This is both non-uniform and discriminatory. The Court's ruling on Plaintiffs' Section 8(b)(1) claim appears to have been influenced in part by the erroneous factual and legal conclusion that in Georgia, everyone must produce documentary proof of citizenship ("DPOC") at some time in order to vote. As the record at trial established, this is not so.

For these reasons, more fully discussed below, Plaintiffs respectfully request that the Court grant relief under Rule 59(e), or in the alternative, Rules 52(b) and 59(a)(1)(B) and resume trial, grant a new trial, or grant whatever remedy the Court feels appropriate within its equitable discretion on Plaintiffs' NVRA claims.

## LEGAL STANDARD

"Rule 59(e) allows a district court to alter or amend a judgment" on the grounds of "manifest errors of law or fact." *King v. King*, 69 F.4th 738, 741 n.2 (11th Cir. 2023). Similarly, Rule 52(b) allows a court to amend its findings, make additional findings, and amend the judgment accordingly "to correct plain errors of law or fact." *Berlinger v. Wells Fargo, N.A.*, No. 2:11-cv-459-FTM-29CM, 2016 WL

3

11423815, at *1 (M.D. Fla. Sept. 6, 2016) (quoting *Nat'l Union Fire Ins. Co. v. Liberty Mut. Ins. Co.*, No. 03-80106-CIV, 2008 WL 3851496, at *1 (S.D. Fla. Aug. 14, 2008)); Fed. R. Civ. P. 52(b). "A Rule 52(b) motion 'may accompany a motion for a new trial under Rule 59.'" *Rolin Constr., Inc. v. Wind Clan Constr. Co., Inc.*, No. CA 18-0032-MU, 2020 WL 13539022, at *2 (S.D. Ala. June 9, 2020) (quoting Fed. R. Civ. P. 52(b)).

Rule 59(a)(1)(B) allows a court to grant a new trial "after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court" if "the verdict . . . will result in a miscarriage of justice." *Jenkins v. Anton*, 922 F.3d 1257, 1264 (11th Cir. 2019). "In a nonjury case, a motion for a new trial should be based upon a 'manifest error of law or mistake of fact' and should only [be] granted for 'substantial reasons.'" *Tampa Port Auth. v. M/V Duchess*, 65 F. Supp. 2d 1303, 1305 (M.D. Fla. 1998).

## ARGUMENT

### I.    THIS COURT SHOULD RESUME TRIAL, GRANT A NEW TRIAL, OR GRANT OTHER EQUITABLE RELIEF UNDER RULE 59(e) OR, IN THE ALTERNATIVE, RULES 52(b) AND 59(a)(1)(B).

Plaintiffs do not seek to "relitigate old matters, raise argument[s] or present evidence that could have been raised prior to the entry of judgment." *PBT Real Est., LLC v. Town of Palm Beach*, 988 F.3d 1274, 1287 (11th Cir. 2021) (quoting *Michael Linet, Inc. v. Village of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005)).

Instead, the Court's dismissal of Plaintiffs' NVRA claims made factual findings contrary to uncontested facts in the record and relied on errors of law warranting relief under Rule 59(e) or Rules 52(b) and 59(a)(1)(B). Thus, reconsideration is "absolutely necessary" to prevent a miscarriage of justice. *See Bryan v. Murphy*, 246 F. Supp. 2d 1256, 1258 (N.D. Ga. 2003) (quoting Local Rule 7.2(E)).

### A. The evidence at trial established that citizens in pending status are not registered to vote in violation of Section 8(a)(1) of the NVRA.

In its ruling from the bench, this Court found that applicants in pending status *are* registered solely because they are not "in a not-able-to-vote category" and "simply have to provide additional documentation." Tr. 754:19-24. But this is not sufficient to classify voters as "registered" under Georgia law or Section 8(a)(1) of the NVRA. At trial, Plaintiffs provided substantial evidence that naturalized citizens in pending status because of Georgia's citizenship verification process are not "registered" voters.[3] Under Section 8(a)(1) of the NVRA, States must "ensure that

---

[3] Although it is not clear whether it formed a basis for this Court's ruling on the NVRA claims, the Court erred in finding that the violations alleged in the Complaint affected not more than 1,810 voters. Tr. 750:22-751:1. The actual figure is many multiples of that. The 1,810 figure represented only those on the March 27, 2024 pending list. *See, e.g.*, Tr. 652:4-9 (McDonald); Pls.' Ex. 281 at 2. A total of approximately 10,000 different voters were on the pending list for the eight lists that Plaintiffs' expert examined alone—each representing only the snapshot of a single day—and it is unknown how many more thousands of other voters were on the lists during the days between the dates of the lists provided by the State, and how many more have been on the pending list since the last list. *See, e.g.*, Tr. 648:24-649:17, 652:14-22 (McDonald).

any eligible applicant is registered to vote in an election." 52 U.S.C. § 20507(a)(1).

An individual is registered under Section 8 only when "he or she is actually able to

go to the polls and cast a *regular* ballot." *U.S. Student Ass'n Found. v. Land*, 546

F.3d 373, 383 (6th Cir. 2008) (emphasis added).

*First,* the evidence at trial showed that Georgia law does not consider citizens

in pending status to be registered voters. Voters placed in pending status are not sent

a precinct card, unlike registered voters. Tr. 291:15-22 (Uzcategui); Pls.' Ex. 1

(Georgia voter registration application stating: "You are NOT officially registered

to vote until this application is approved. You should receive a voter precinct card

in the mail."). Instead, they are sent a notice that their registration is not completed

and remains in pending status until satisfactory proof of citizenship is received. Tr.

344:3-11 (Harvey); Tr. 588:12-589:8, 596:10-597:8, 625:3-626:10 (Hart); Tr.

645:22-646:4 (McDonald); Pls.' Ex. 274; Pls.' Ex. 275.

*Second*, the evidence at trial showed that Georgia does not give naturalized

citizens placed on the pending list the protections from unlawful removals that the

NVRA requires for all registered voters. The Court erred when it stated that the

relevant "protections" of the NVRA are "basically ensuring eligible voters vote, and

ensuring that accurate and current voter registration rolls are uniform and

nondiscriminatory." Tr. 754:8-13. The relevant protections afforded to registered

voters, but not to voters in pending status, are the NVRA's protections against

6

removal without sufficient process. Former Georgia Elections Director, Chris Harvey, testified to the NVRA provisions that protect duly *registered* voters from arbitrary removal from the voter rolls. Tr. 355:4-20, 356:17-357:18 (Harvey). Registered voters who are in active or inactive status are subject to these removal protections under Section 8 of the NVRA. Tr. 357:5-18, 358:1-16 (Harvey). This means that they cannot be removed from the voter rolls—and completely disenfranchised—without adherence to the guidelines outlined in Section 8. *See* 52 U.S.C. §§ 20507(a)(3) (prohibiting the removal of a registrant from the list except under specific conditions), 20507(b)(2) (prohibiting the removal of registered voters from the rolls due to failure to vote); 20507(c) (providing guidelines for permissible voter removal programs); 20507(d) (prohibiting the removal of registered voters from the rolls on the ground that they changed residence without certain procedures).

The evidence at trial showed that applicants in pending for citizenship verification status can have their registrations cancelled at any time without any notice, placing them outside the NVRA's removal protections. Prior to 2017, applicants in pending for citizenship verification status were cancelled within 40 days—meaning they were not able to vote and were wholly disenfranchised—if they had not cured the issue within that time. The cancellation period for applicants in pending for citizenship status was then changed to 26 months. Tr. 376:5-377:13, 389:14-396:7 (Harvey); Tr. 258:12-259:11 (Butler); Tr. 529:15-533:1 (Williams);

7

Pls.' Ex. 97; Pls.' Ex. 274. The evidence at trial established that this cancellation clock has been applied to applicants in pending for citizenship verification status and can be applied in the future. While Defendant's counsel asserted that a cancellation clock was "not being enforced" currently, he admitted he was "not aware of anything that says it's no longer in existence." Tr. 727:8-23 (Tyson).

Absent relief from this Court, therefore, there is nothing to stop Defendant from enforcing a cancellation clock of any length, or even immediately rejecting applications from eligible naturalized citizens for whom the Georgia Department of Driver Services (DDS) has outdated citizenship information, *because the State does not consider them to be registered*. In fact, in 2023 Mr. Jesus Eduardo Uzcategui, a naturalized citizen, had his registration rejected after he provided his limited-term license number on Georgia's paper voter registration application, despite also including a copy of his United States passport with his application. Tr. 286:23-290:17, 293:20-294:17, 298:1-21 (Uzcategui). This suggests that the cancellation clock was programmed into the State's new voter registration database, GARVIS, and could be activated at any time. This arbitrary clock does not comply with the NVRA's requirements regarding the timeline and process for removing registered voters from the voter registration list, meaning applicants in pending status simply

8

cannot be considered registered voters under the NVRA.[4] The NVRA does not permit Georgia to create two classes of "registered" voters in federal elections—one class protected from purges and the other unprotected.

In light of this evidence adduced at trial, the Court's grant of judgment in favor of Defendant on Plaintiffs' NVRA Section 8(a)(1) claim was erroneous. Plaintiffs respectfully request that the Court vacate its prior findings and judgment that Georgia's citizenship verification protocol complies with Section 8(a)(1) of the NVRA, and resume or grant a new trial to permit this claim to proceed, or grant other appropriate equitable relief.

### B. The evidence at trial showed that Georgia's program is not uniform and is discriminatory in violation of Section 8(b)(1) of the NVRA.

This Court found that because all naturalized citizens with a limited-term license are subjected to the citizenship verification protocol, "[t]hat is uniformity." Tr. 755:3-7. This is an error of law. Programs to maintain accurate voter rolls are considered uniform under the NVRA only when the same protocols are applied to

---

[4] Defendant's counsel apparently concedes that such a clock violates the NVRA when applied to truly registered voters. Tr. 726:22-727:1 (Tyson) ("The evidence has showed from Mr. Harvey, Mr. Williams, that there is no clock that is currently running or that will run against voters in pending citizenship status, and so there's no removal of the voter rolls that would be possibly a violation of the NVRA at that point."). Again, Defendant's counsel was careful to say that nothing officially bans the enforcement of the cancellation clock—only that it was not currently being enforced by Defendant.

9

*everyone*, not just a subset of the voter list, however the subset is defined.[5] *See Mi Familia Vota v. Fontes*, No. CV-22-00509-PHX-SRB, 2024 WL 862406, at *41 (D. Ariz. Feb. 29, 2024).

Georgia's program is not uniform because the State's citizenship verification protocol does not apply to *all applicants*. Only applicants who provide a driver's license or state identification number when they register to vote are subject to the protocol and are matched with DDS data for citizenship information. Pls.' Ex 51 at 7-12 (McDonald Rep.); Tr. 643:14-644:17 (McDonald); Tr. 112:12-22 (McClendon); Tr. 359:4-25 (Harvey). Applicants who do *not* provide a driver's license or state identification number are not subject to the protocol. Pls.' Ex 51 at 9-10 (McDonald Rep.); Tr. 644:13-17 (McDonald); Tr. 348:16-349:15, 350:9-354:17, 359:4-360:18 (Harvey). These applicants—whether they leave the section of the application blank or provide the last four digits of their Social Security number—are *not* matched for citizenship and are put into active status without any citizenship verification beyond a confirmation that the applicant affirmed under penalty of perjury that they are a U.S. citizen on the registration form. Pls.' Ex 51 at 9-10 (McDonald Rep.); Tr. 644:13-17 (McDonald); Tr. 348:16-349:15, 353:21-

---

[5] Section 8(b)(1) of the NVRA requires: "Any State program or activity to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll for elections for Federal office shall be uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965." 52 U.S.C. § 20507(b)(1).

354:5, 359:4-360:18 (Harvey). Evidence at trial indicated that three percent of voters in the entire voter file lack a Georgia driver's license number and therefore could not have been subject to the protocol. Tr. 375:15-25 (Harvey); Pls.' Ex. 51 at 9 (McDonald Rep.). Of the approximately 7.7 million records in the voter file, Tr. 654:8-10 (McDonald), this represents approximately 231,000 registered voters who never provided documentary proof of citizenship and have not been subjected to Defendant's citizenship verification protocol. As a result, Georgia's citizenship verification protocol violates Section 8(b)(1) of the NVRA.

Additionally, Defendant's citizenship verification protocol is not uniform and is discriminatory in violation of Section 8(b)(1) of the NVRA because only those who provide a limited-term license—in other words, people who at one time were not U.S. citizens—are required to provide documentary proof of citizenship. *United States v. Fla.*, 870 F. Supp. 2d 1346, 1350 (N.D. Fla. 2012); *Mi Familia Vota*, 2024 WL 862406, at *41. Naturalized citizens who have a limited-term license when they register to vote are subject to the protocol and are placed into pending status following a match with DDS. Tr. 337:19-339:11 (Harvey). This is not, as the Court suggested, simply a matter of "[h]aving to produce the documents in the first place, which all of us ha[ve] to do at some point." Tr. 752:1-3. The conceded evidence at trial showed that some voters are not subject to the protocol and *never* provide proof of citizenship beyond their affirmation of citizenship on the voter registration

11

application, whether to an election official, DDS official, or anyone else. Tr. 348:16-349:5 (Harvey). For these voters, Defendant admits that Georgia accepts their affirmation under penalty of perjury that they are U.S. citizens and places them into active status with no further questions. Tr. 28:9-11 (Jacoutot) ("[T]hey, along with every other voter, swear they are a citizen. And if they are not a citizen, they can be prosecuted under the law.").

In fact, as a matter of law, Georgia is *prohibited* from requiring documentary proof of citizenship for voter registration because it has a unitary voter registration system that treats federal and State voter registration forms equivalently.[6] Tr. 345:11-346:9 (Harvey). The only required identification documents for first-time voters are those set forth in the Help America Vote Act ("HAVA"), and include documents that can be issued without documentary proof of citizenship. *See* Tr.

---

[6] *See League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 4 (D.C. Cir. 2016) (enjoining Election Assistance Commission (EAC) from including a DPOC requirement in the National Voter Registration form's state-specific instructions for Georgia); *League of Women Voters of the U.S. v. Harrington*, No. 16-00236, 2021 WL 4206778, at *1-7 (D.D.C. Sept. 16, 2021) (granting summary judgment to plaintiffs, including the Georgia Coalition for the People's Agenda, on their claim that the former EAC executive director violated the Administrative Procedure Act by including a DPOC requirement in Georgia's and Alabama's state-specific instructions on the National Voter Registration form). *See generally Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 20 (2013) (holding that NVRA prohibits states from requiring DPOC from applicants registering to vote with federal form); *Fish v. Kobach*, 840 F.3d 710, 716 (10th Cir. 2016) (holding that Section 5 of the NVRA preempted "Kansas's DPOC law as enforced against those applying to vote while obtaining or renewing a driver's license").

353:21-354:17 (Harvey) (individual who registered to vote without a driver's license or state identification number is put into active status and is only required to show one of a "broad range" of identification documents under HAVA such as "bank statement or utility bill" that does not indicate citizenship).

An Arizona federal district court decision—on which, due to its recency, this Court did not have the opportunity to request briefing—is instructive. There, a provision requiring county recorders to "consult SAVE" for registered voters who county recorders have "reason to believe" are noncitizens was found to violate Section 8(b). *Mi Familia Vota*, 2024 WL 862406, at \*41. This provision violated federal law because "*only naturalized citizens would be subject to scrutiny* under the Reason to Believe Provision, who if 'confirmed' as non-citizens, *would be required to provide DPOC*. This would have a non-uniform and discriminatory impact on naturalized citizens." *Id.* (emphasis added). A different provision of Arizona law was upheld as uniform and nondiscriminatory because it "necessarily require[s] that county recorders first review the registration files of *all* registered voters before further investigating those individuals who have not submitted DPOC." *Id.* at \*42.[7]

---

[7] Unlike Georgia, Arizona does not have a unitary election system, and instead bifurcates voter registration between state and federal elections. Therefore, unlike Georgia, Arizona may require documentary proof of citizenship of *all* applicants who wish to vote in non-federal elections. *See Mi Familia Vota*, 2024 WL 862406, at \*2.

Like the enjoined provision of Arizona law, Defendant's citizenship verification protocol does not apply to all applicants, as those who do not include a driver's license number on their application are not matched with DDS data. Instead, the protocol applies only to applicants who the State has "reason to believe" are noncitizens by virtue of admittedly outdated DDS data, Tr. 645:4-21 (McDonald); Tr. 121:2-121:16 (McClendon); Tr. 596:10-597:23 (Hart), and requires them—and them alone—to provide documentary proof of citizenship. Tellingly, while Defendant's counsel relied on *Mi Familia Vota* in his Rule 52(c) presentation for its holdings on Section 2 of the Voting Rights Act and *Anderson-Burdick* claims, he neglected to mention its contrary holding on the NVRA. Tr. 724:4-727:1 (Tyson).

Florida previously attempted a scheme nearly identical to Georgia's where the Secretary of State compiled a list of registered voters who were potentially noncitizens based on driver's license records, which, as in Georgia, swept in those who had obtained a noncitizen driver's license and then later became naturalized and registered to vote. *United States v. Fla.*, 870 F. Supp. 2d at 1347-48. While the Secretary abandoned the program before the court could enjoin it, the court there found that the program likely violated Section 8(b). *Id.* at 1350 ("The Secretary's methodology made it likely that the properly registered citizens who would be required to respond and provide documentation would be primarily newly

14

naturalized citizens. The program was likely to have a discriminatory impact on these new citizens."). So too here.

Finally, the NVRA is a strict liability statute, and thus the Court's concluding reference to the State's purported interest in preventing fraud, *see* Tr. 755:17-20 ("But under the standards guiding the Court and looking at the State's interest and maintaining the integrity of our voting system and not allowing voter fraud to infect that system, these are the Court's findings."), has no application to Plaintiffs' NVRA claims. *Charles H. Wesley Educ. Found., Inc. v. Cox*, 324 F. Supp. 2d 1358, 1367 (N.D. Ga. 2004), *aff'd*, 408 F.3d 1349 (11th Cir. 2005) ("Furthermore, the state argues that it should be permitted to avoid the plain language of [Section 8 of the NVRA] if it has a good policy reason for doing so. Again, the plain language itself dooms that argument. Had Congress meant to allow for exceptions, it would have so provided."). No State interest can outweigh the letter of the NVRA.[8]

---

[8] While the Court did not question the remedy sought by Plaintiffs in connection with their NVRA claim, the appropriate remedy is ordering compliance with Sections 8(a) and 8(b), which would entail (1) eliminating the non-uniform treatment of naturalized citizens who list a driver's license number on their voter registration application, by accepting for registration purposes the same oath confirming citizenship that the State accepts for those who do not list a driver's license number; (2) treating all voters, even if they have listed a limited-term driver's license number on their voter registration application, the same; and (3) treating all such voters as "registered" by affording them the protections against unlawful removal of the NVRA and not requiring them to provide documentary proof of citizenship based solely on their possession of a limited-term driver's license.

15

## **CONCLUSION**

For the foregoing reasons, the Court should grant Plaintiffs' motion, vacate its judgment, and exercise its discretion to resume the trial on the merits or grant a new trial on Count Four of Plaintiffs' Third Amended Complaint, or provide other appropriate equitable relief.

Respectfully submitted, this 9th day of May, 2024.

*/s/ Bryan L. Sells*

Bryan L. Sells
Georgia Bar No. 635562
The Law Office of Bryan L. Sells,
LLC
PO Box 5493
Atlanta, Georgia 31107
Tel: (404) 480-4212
Email: bryan@bryansellslaw.com

Jon Greenbaum*
Ezra D. Rosenberg*
Julie Houk*
Alexander Davis*
Heather Szilagyi*
Grace Thomas*
Ryan Snow*
jgreenbaum@lawyerscommittee.org
erosenberg@lawyerscommittee.org
jhouk@lawyerscommittee.org
adavis@lawyerscommittee.org
hszilagyi@lawyerscommittee.org
gthomas@lawyerscommittee.org
rsnow@lawyerscommittee.org
Lawyers' Committee for Civil Rights
Under Law
1500 K Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 662-8600
Facsimile: (202) 783-0857

Vilia Hayes*
Gregory Farrell*
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

Alice Huling*
Christopher Lapinig*
Danielle Lang*
Benjamin Phillips*
Melissa Neal*
Margaret Graham*
AHuling@campaignlegalcenter.org
CLapinig@campaignlegalcenter.org
DLang@campaignlegalcenter.org
BPhillips@campaignlegalcenter.org
MNeal@campaignlegalcenter.org
MGraham@campaignlegalcenter.org
Campaign Legal Center
1101 14th St. NW, Suite 400
Washington, DC 20005
Telephone: (202) 736-2200
Facsimile: (202) 736-2222

Meredyth L. Yoon
Georgia Bar No. 204566
Asian Americans Advancing Justice –
Atlanta
5680 Oakbrook Parkway, Suite 148
Norcross, Georgia 30093
myoon@advancingjustice-atlanta.org
Telephone: (404) 585-8466

*\*Admitted pro hac vice*

*Counsel for Plaintiffs*

17

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1, the undersigned counsel hereby certifies that this document has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1.

Dated this 9th day of May 2024.

> */s/ Bryan L. Sells*
> Georgia Bar No. 635562
> The Law Office of Bryan L. Sells, LLC
> PO Box 5493
> Atlanta, Georgia 31107
> Tel: (404) 480-4212
> Email: bryan@bryansellslaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 9th, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the counsel of record in this case.

Dated this 9th day of May 2024.

> */s/ Bryan L. Sells*
> Georgia Bar No. 635562
> The Law Office of Bryan L. Sells, LLC
> PO Box 5493
> Atlanta, Georgia 31107
> Tel: (404) 480-4212
> Email: bryan@bryansellslaw.com