**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| GEORGIA COALITION FOR THE PEOPLE'S AGENDA, INC., *et al.*,<br><br>    *Plaintiffs,*<br><br>v.<br><br>BRAD RAFFENSPERGER, in his official capacity as Secretary of State for the State of Georgia<br><br>    *Defendant.* | CIVIL ACTION<br><br>FILE NO. 1:18-CV-04727-ELR |

**<u>DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION TO ALTER OR AMEND JUDGMENT AND TO RESUME OR
GRANT A NEW TRIAL</u>**

**INTRODUCTION**

Faced with this Court's comprehensive ruling at the conclusion of Plaintiffs' evidence granting judgment in favor of the Secretary on a Rule 52(c) motion, Plaintiffs now want a do-over. To that end, they invite the Court to restart the trial on a more-limited basis encompassing only their claims under the National Voter Registration Act (NVRA). But this Court should decline Plaintiffs' invitation. As this Court found after hearing the entirety of Plaintiffs' case, Georgia's citizenship-verification procedures are uniform and non-discriminatory. After six years of litigation, Plaintiffs did not present a single

1

eligible voter who was unable to vote due to Georgia's citizenship-verification process, but they still ask this Court to enjoin Georgia's commonsense approach. Plaintiffs had their opportunity to present evidence, but this Court correctly found it lacking.

Plaintiffs offer two primary reasons why this Court should revisit its earlier ruling. First, they claim that the Court erred in finding that voters who are registered but in "Pending Citizenship" status are, in fact, registered to vote. Of course, this Court already fully considered these very same arguments at trial and properly rejected them. Based on the evidence at trial, an individual in "Pending Citizenship" status is able to vote a regular ballot when they show up at the polls by showing required documentation. And even if they do not have that documentation with them, they can cast a provisional ballot and have that ballot counted by showing documentation within three days after Election Day. That is nothing like person who is actually not registered to vote, where they are not allowed to vote a regular ballot under any circumstances and where any provisional ballot they cast will not count unless they can show that they were properly registered prior to the election. Plaintiffs offer no new basis upon which the Court should revisit its correct conclusions now.

Second, Plaintiffs mistakenly claim that Georgia's citizenship-verification process applies only to voters who had limited-term driver's

licenses. But the Court correctly held that Georgia's processes uniformly. Both Georgia and federal law require a registrant to provide a driver's license number when registering to vote if they have one. And Georgia's process performs a citizenship verification on each of those applicants. As this Court correct pointed out, voters who are placed into "Pending Citizenship" status have not yet provided the documentary proof of citizenship that other voters who provided their driver's license (which is almost all voters, as Plaintiffs point out) have provided. This Court also correctly found that almost every Georgia voter already presents proof of citizenship when registering to vote and Plaintiffs only offer cases that they either previously cited or that were available to them at the time of the trial which they failed to argue.

This Court correctly resolved this case at the conclusion of Plaintiffs' evidence and Plaintiffs offer no compelling reason to revisit these issues. The Court should deny Plaintiffs' motion.

## FACTUAL BACKGROUND

The testimony at trial established that the current number of individuals in Pending Citizenship status is 1,810 out of nearly seven million registered voters, or 0.0023% of all voters in Georgia. Tr. 685:6–686:4. The evidence further established that voters being placed in different statuses, including Pending Citizenship and Active-MIDR do not affect whether someone is able to vote because those voters get a regular ballot when they provide the required

identification. Tr. 386:3–16 (Harvey); Tr. 558:2–20 (Williams). The Court determined that, because these individuals can vote a regular ballot, there is no basis to conclude that they are not registered to vote. Tr. 682:14–683:8. And, as discussed below, this matches Plaintiffs' proposed standard under the NVRA: "An individual is registered under Section 8 only when 'he or she is actually able to go to the polls and cast a *regular* ballot.'" [Doc. 258, p. 6] (quoting *U.S. Student Ass'n Found. v. Land*, 546 F.3d 373, 383 (6th Cir. 2008) (emphasis original)). There is no legal or factual error here. But in their brief, Plaintiffs offer a few items they believe were facts this Court did not consider, all of which were part of the trial record and each of which was addressed by the Court.

First, Plaintiffs appear to claim this Court was unaware that NVRA claims were not part of the *Fair Fight Action* case. [Doc. 258, p. 2 n.2]. But this Court was aware of that fact because Plaintiffs argued that point, Tr. 731:11–19, and because counsel for the Secretary made clear that the only claims that matched in the two cases were the constitutional claims and the Voting Rights Act claim, Tr. 723:18–724:3.

Second, Plaintiffs claim this Court did not understand which voters are required to present documentary proof of citizenship. [Doc. 258, p. 3]. But the Court made clear that the uniformity issue was resolved because the process applied equally to all persons who registered to vote and provided their driver's

4

license or state identification number, as is required by state and federal law. Also, the process applies equally to all individuals who had a non-limited term license at any point. Tr. 683:3–8.

Third, Plaintiffs argue the Court was confused about the number of people in Pending Citizenship status from the voter file. [Doc. 258, p. 5 n.3]. But this Court is aware that, in this case, it could only award prospective injunctive relief for an ongoing violation of federal law, *Fla. Ass'n of Rehab. Facilities v. Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1219 (11th Cir. 2000), and thus the number of individuals in the past—under prior versions of the processes—does not address whether there is an ongoing violation of any type. And the fact that people are in Pending Citizenship change shows that the process is working and those individuals can be moved to Active status after submitting the required documentation or after having their status verified in SAVE, or they can be removed from the rolls if they confirm with their county registrar that they are not citizens.

Fourth, Plaintiffs think the Court misunderstood whether "clocks" would result in cancellations of registrations for voters in Pending Citizenship status. [Doc. 258, pp. 7–8]. But Plaintiffs presented no evidence that there is currently any cancellation clock and the testimony established that no cancellation clock is being applied to voters in Pending Citizenship status—and Plaintiffs cannot cite anything showing the clock will be applied in the future. *Id.* Plaintiffs

cannot point to any evidence that a clock is applied or will be applied in the future, meaning that there is nothing this Court could do to provide prospective injunctive relief even if they were correct.

## ARGUMENT AND CITATION OF AUTHORITY

Plaintiffs' motion falls far short of the requirements of Rules 52 and 59, because it does not allege "any newly discovered evidence, nor establish[] any intervening development or change in the controlling law, or need to correct a clear error or manifest injustice." *Hood v. Perdue*, 300 F. App'x 699, 700 (11th Cir. 2008) (citing *Preserve Endangered Areas of Cobb's History, Inc. v. United States Army Corps of Eng'rs*, 916 F. Supp. 1557, 1560 (N.D. Ga. 1995)). Plaintiffs ultimately offer nothing new—they simply "repackage familiar arguments to test whether the Court will change its mind." *Brogdon v. Nat'l Healthcare Corp.*, 103 F. Supp. 2d 1322, 1338 (N.D. Ga. 2000). There is no reason to restart this case—again—when Plaintiffs were given ample opportunity to produce evidence and fell far short of their burden of proof in their case in chief during the trial. Their motion just restates their disagreement with this Court's ruling on the merits and should be denied. *See PBT Real Estate, LLC v. Town of Palm Beach*, 988 F.3d 1274, 1287 (11th Cir. 2021) (affirming rejection of Rule 59 motion even if new evidence was available).

6

## I.    Plaintiffs offer no new evidence or error in this Court's ruling regarding Section 8(a)(1) of the NVRA.

Plaintiffs begin by criticizing this Court's framework for whether voters were "registered" for purposes of Section 8(a)(1) of the NVRA. That section ensures that "any eligible voter is registered to vote in an election." 52 U.S.C. § 20507(a)(1); *see also* MSJ Order [Doc. 160, p. 35]. Plaintiffs do not present new evidence on this point, but rather just argue that the Court's view of registration is incorrect. [Doc. 258, pp. 5–6]. But none of the cases cited by Plaintiffs require any different result.

Plaintiffs cite a Sixth Circuit case[1] that adopts the same standard the Court did here—can the individual "go to the polls and cast a regular ballot"? *Land*, 546 F.3d at 383. That case specifically found that what the state called the individual did not matter, but instead what mattered was whether they were able to cast a ballot. *Id.* at 384. This Court correctly concluded that, regardless of what status the individual is in or what the letter said that Plaintiffs cite, individuals in Pending Citizenship status are able to vote a regular ballot by doing something as simple as presenting a non-limited term Georgia driver's license. Tr. 386:3–16; 558:2–20.

---

[1] Plaintiffs previously cited this case to the Court in their 52(c) argument. Tr. 732:3–11.

Plaintiffs' only other citation in this section is to the text of the NVRA regarding whether individuals will have their registrations cancelled. [Doc. 258 pp. 6–8]. But they present no evidence now and presented none at trial that any cancellation clock is being enforced or that there are any plans to enforce such a clock in the future. *Id.* And if a clock were to be re-instituted, the Court would then have to evaluate whether that clock complied with the cancellation provisions of the NVRA. *See generally*, 52 U.S.C. § 20507(a)(3). Thus, Plaintiffs attempt to argue a case that does not exist: *If* the State were to reinstitute a clock (for which there is no evidence), and *if* that clock did not comply with the NVRA, and *if* the result was voters in Pending Citizenship having their registrations cancelled, *then* Plaintiffs may have some grounds to seek some kind of relief. But they have presented no facts that any of those conditions are present.

Finally, Plaintiffs cite the case of Mr. Uzcategui. [Doc. 258, p. 8]. But they make a logical leap the evidence does not allow, that Mr. Uzcategui must have been caught in some kind of cancellation clock. But his situation is far more easily explained as a failure by county officials to properly process his paper application. Tr. 299:23–300:13. Mr. Uzcategui was placed into active status shortly after he provided his passport to Fulton officials, which would have been sufficient for any voter in Pending Citizenship status to vote a regular ballot at the polls. Tr. 300:8–25. Mr. Uzcategui has also voted regularly

8

since that point and was never prevented from voting. *Id.* In any case, restarting the trial, as Plaintiffs suggest, to resolve the status of a single voter who has been able to vote with no issues makes no sense and would be a clear misuse of judicial resources because it cannot affect the outcome of the case.

For all these reasons, Plaintiffs' first ground for reconsideration and a continuing trial has no merit.

## II.    Plaintiffs offer no new evidence or error regarding whether the citizenship verification process is uniform under Section 8(b)(1) of the NVRA.

Plaintiffs next claim that this Court misunderstood what "uniformity" meant in the context of the NVRA. But Plaintiffs again show no error of law on this point. Section 8(b)(1) provides that "[a]ny state program or activity to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll" "shall be uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965[.]" 52 U.S.C. § 20507(b)(1); *see also* MSJ Order [Doc. 160, p. 35] (quoting *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1324–25 (N.D. Ga. 2016)).

Plaintiffs' argument boils down to this distinction: they argue the uniformity must apply to all voters, whereas this Court correctly found uniformity applies to all voters who provide their driver's license or state identification card number (as required by state and federal law). This Court further accurately found that the only voters who can be placed into "Pending

9

Citizenship" status are those voters who previously submitted documentary proof of non-citizenship to the State. *Compare* [Doc. 258, pp. 9–10] *with* Tr. 683:3–8. Plaintiffs provide no basis for this Court to revisit its finding on this point either.

Plaintiffs first re-argue what the Court clearly addressed in its ruling, pointing out that voters who do not provide a driver's license number (which they are required to do if they have one) do not have the citizenship-verification process applied to them. [Doc. 258, p. 10–11]. But the Court understood the scope of the process in its ruling on this point and to which voters the process applied. Tr. 678:17–679:1, 683:3–8. That alone demonstrates the motion is just an attempt to get the Court to change its mind, not to present new evidence or new law on this point.

Plaintiffs next return to a repackaged version of their constitutional national-origin discrimination claim, arguing that the citizenship-verification process violates the NVRA because it only applies to those individuals who previously had a limited-term license. [Doc. 258, pp. 11–12]. But this misstates the actual evidence, as the Court correctly found. Anyone who gets a Georgia driver's license or state identification card has to provide documentary proof of citizenship or legal status (if they are not a U.S. citizen) to the Department of Driver Services. This information is cross-checked when those people register to vote (which could be when they receive their driver's license or at a later

time) for all registrants who have a driver's license or state identification. As this Court correctly found, only individuals who provided *documentary proof* they were *not* citizens to the State of Georgia are put in "Pending Citizenship" status, and only if they do not provide evidence of their citizenship status at the time they register.[2] Tr. 683:3–8.

As a last-ditch effort, Plaintiffs cite a number of cases related to the *federal* voter-registration form, which was not challenged in this case. [Doc. 258, p. 12 n.6]. In doing so, they admit that there are different requirements under federal law for first-time registrants by mail, which drives home the point that *status* does not matter in an NVRA claim because those voters can vote a regular ballot. *Id.* All of the cases Plaintiffs cite do not relate to the state voter-registration form, but rather only to the federal form. Plaintiffs previously made no argument about the federal form and brought no evidence during their case of any voter who had registered to vote in Georgia using the federal form and that registration not being properly handled. *See* Tr. 731:15–

---

[2] Plaintiffs also restate their desire that Georgia rely on the sworn statement of a voter on their application, [Doc. 258, pp. 11–12], which is just another way of saying they want Georgia to move everyone in Pending Citizenship into Active status even if the only documents the individuals have ever provided to the State is proof they are not citizens. *Compare with* Tr. 680:24–682:3. That is a recipe for disaster (individuals who show as "Active" and "Not Citizen" in the database) and, based on the testimony of Plaintiffs' own expert, could allow non-citizens to be on Georgia's voter rolls and allow them to vote. It also underscores that Plaintiffs continue to lack a "laser targeted" remedy. Tr. 21:19–25.

11

733:21 (not mentioning the federal form). The cases Plaintiffs cite are not helpful for the issue before the Court about the state process. Plaintiffs brought this case about Georgia's citizenship verification procedures, not about the federal form.

Plaintiffs also ask for a do-over in their arguments about two cases involving the NVRA, starting with *Mi Familia Vota v. Fontes*, No. CV-22-00509-PHX-SRB, 2024 U.S. Dist. LEXIS 36596, at *158, *171 (D. Ariz. Feb. 29, 2024).[3] That case involved a provision of Arizona law where a registrar could challenge a voter's registration—without proof—if the registrar has a subjective "reason to believe" that the voter is not a citizen. Arizona's law is dramatically different from the document-based system in Georgia which was upheld as constitutional and not in violation of Section 2. *Id.*; *see also* Tr. 724:4–7 (relying on constitutional and Section 2 provisions). And even the Arizona court concluded that a process that applied equally to voters who had not provided proof of citizenship was "uniform" for purposes of Section 8 of the NVRA, which is consistent with this Court's ruling in this case. *Mi Familia Vota*, 2024 U.S. Dist. LEXIS 36596, at *144.

---

[3] Plaintiffs do not explain their failure to cite to or even mention this case during the trial, despite it being decided well before trial began. It is clearly not new law Plaintiffs offer because it existed at the time of trial. *PBT Real Estate, LLC*, 988 F.3d at 1287.

The last case belatedly offered by Plaintiffs was decided in 2012 on a temporary restraining order basis and was clearly available to Plaintiffs to argue during the trial. *United States v. Florida*, 870 F. Supp. 2d 1346 (N.D. Fla. 2012). In that case, Florida had already abandoned the challenged program and the primary challenge was under the NVRA's list-maintenance provisions, specifically that Florida was conducting systematic list maintenance within 90 days of a federal election. *Id*. at 1348–49. On the challenge to uniformity, Florida's process in that case drastically differed from Georgia's process in this case, did not utilize SAVE, and removed individuals from the voter rolls. *Id*. at 1347, 1351. In Georgia, voters placed into "Pending Citizenship" status are allowed to vote after showing proper documentation, but that was not the case in Florida. *Id*. Given the early stage and sparsely developed record in that case, and the differences in Florida's program, the case does not provide a basis for a different ruling here.

Finally, Plaintiffs make an argument about "strict liability" that is only relevant if they were absolutely correct in their prior legal arguments, which they are not. [Doc. 258, p. 15]. This Court must apply the law and, in the election context, every decision matters for voter confidence. Tr. 680:24–682:3. Plaintiffs yet again try to re-argue their remedy, but still cannot state anything different than what little they provided the Court during the trial. [Doc. 258, p. 15 n.8].

For all the foregoing reasons, Plaintiffs have also provided no basis for this Court to revisit its ruling on the uniformity provisions of the NVRA.

## III. Georgia's process is reasonable, uniform, and protects the integrity of the voting system.

Plaintiffs wish the Court had decided this case differently. But the Court's decision was based on the evidence Plaintiffs presented at trial in a case that had been pending for nearly six years. Plaintiffs were unable to carry their evidentiary burden, failed to articulate a coherent and practical remedy, and neglected to make arguments based on cases plainly available to them at the time of trial. And now they come to this Court asking for another shot at their proof without citing to any new law, new facts, or anything else compelling that was unavailable to them at trial. Instead, Plaintiffs just "repackage familiar arguments to test whether the Court will change its mind." *Brogdon*, 103 F. Supp. 2d at 1338.

As this Court found, the State has strong interests in preventing voter fraud. Individuals in Pending Citizenship status have multiple options to vote, including presenting a passport or non-limited term Georgia driver's license (or a number of other documents) before they to vote, presenting those documents at the precinct on election day, or voting a provisional ballot and presenting those documents to election officials within three days after Election Day. Tr. 680:8–18. In response to a system that requires individuals

14

who previously presented documentary proof they were not citizens and later register to vote, Plaintiffs' only purported solution is to place everyone in Active status, regardless of whether election official knows if they naturalized or not. Tr. 680:24–682:3. But that is no solution at all. It is instead a drastic remedy in search of a problem. Georgia election officials will almost certainly be asked after Election Day how they know that ineligible voters were not allowed to vote, and taking away Georgia's citizenship-verification processes will make that question impossible to answer.

At the end of the day, those in Pending Citizenship status are able to vote and cast a regular ballot if they provide proper documentation that is readily available to them. Tr. 682:19–24. The system is uniform and nondiscriminatory and protects the integrity of Georgia's election system. Tr. 683:3–8. The system complies with federal law, especially the NVRA, as this Court correctly found. Plaintiffs' latest volley does not provide a basis for any other result.

## CONCLUSION

Plaintiffs have provided no basis for this Court to revisit its decision on the merits in this case and have provided no reason to restart this case yet again and require the Secretary to present evidence at trial. This Court should deny Plaintiffs' motion.

Respectfully submitted this 23rd day of March, 2024.

**STATE LAW DEPARTMENT**

Christopher M. Carr
Attorney General
Georgia Bar No. 112505
Bryan K. Webb
Deputy Attorney General
Georgia Bar No. 743580
Russell D. Willard
Senior Assistant Attorney General
Georgia Bar No. 760280
State Law Department
40 Capitol Square, S.W.
Atlanta, Georgia 30334

*/s/Bryan P. Tyson*
Bryan P. Tyson
Special Assistant Attorney General
Georgia Bar No. 515411
btyson@taylorenglish.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@taylorenglish.com
Diane Festin LaRoss
Georgia Bar No. 430830
dlaross@taylorenglish.com
Riviere Duffy
Georgia Bar No. 118682
rduffy@taylorenglish.com
**TAYLOR ENGLISH DUMA LLP**
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
Telephone: (678) 336-7249

*Counsel for Defendant Secretary of State Brad Raffensperger*

16

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing Response Brief has been prepared in Century Schoolbook 13, a font and type selection approved by the Court in L.R. 5.1(B).

/s/ Bryan P. Tyson
Bryan P. Tyson