# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

|  |  |
|---|---|
| GEORGIA COALITION FOR THE PEOPLES' AGENDA, INC., *et. al.*<br><br>Plaintiffs,<br><br>v.<br><br>BRAD RAFFENSPERGER, in his official capacity as Secretary of State for the State of Georgia,<br><br>*Defendant*. | Civil Action No.<br>1:18-cv-04727-ELR |

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO ALTER OR AMEND JUDGMENT AND TO RESUME OR GRANT A NEW TRIAL

Plaintiffs' Motion to Alter or Amend the Judgment, ECF No. 258 ("Mot."), identifies clear errors of law and fact that warrant relief under the Federal Rules of Civil Procedure. *See King v. King*, 69 F.4th 738, 741 n.2 (11th Cir. 2023). Rather than contend with these manifest errors, Defendant's Response in Opposition, ECF No. 259 ("Opp."), mischaracterizes Plaintiffs' Motion and the evidence adduced at trial, misstates the law, and misunderstands the Court's ruling. Plaintiffs respectfully request that this Court grant relief under Rule 59(e) or 52(b).

1

## LEGAL STANDARD

Defendant repeatedly faults Plaintiffs for failing to offer anything "new" in support of their motion. *See* Opp. at 6-7, 14. This is the incorrect legal standard. As explained in detail in Plaintiffs' Motion, Federal Rules of Civil Procedure 59(e) and 52(b) allow the Court to alter or amend its judgment to correct manifest errors of law or fact.[1] Mot. at 3-4. As they make clear in their Motion, Plaintiffs are not seeking a do-over. Instead, Plaintiffs outline clear errors that merit correction on the basis of the law and evidence presented at trial. *See Bryan v. Murphy*, 246 F. Supp. 2d 1256, 1258-59 (N.D. Ga. 2003) (reconsideration necessary where there is "a need to correct a clear error of law or fact").

## ARGUMENT

**I. PLAINTIFFS' MOTION DEMONSTRATES CLEAR ERROR WARRANTING RELIEF UNDER RULES 59(e) AND 52(b)**

**A. The Court's ruling on Section 8(a)(1) of the NVRA was based on manifest error and should be amended.**

Georgia law does not treat voters in pending for citizenship status as registered, Mot. at 5-8, and Defendant does not contend otherwise. As such, it was error for the Court to enter judgment against Plaintiffs on their claim under Section

---

[1] Plaintiffs' motion is *not* brought under Federal Rule of Civil Procedure 59(a)(2), which allows parties to move for a new trial on the basis of evidence that has come to light after trial. Here, Plaintiffs seek to point out manifest error rather than identify newly discovered evidence, and accordingly moved under Rule 59(e) and, in the alternative, Rule 52(b).

8(a)(1) of the National Voter Registration Act ("NVRA"). *See id*. at 6-8. Defendant does not—and cannot—explain how applicants in pending status can be considered registered when the Georgia voter registration application explicitly tells those applicants they "are NOT officially registered," and they are sent a notice that their registration is not complete and has not been approved. *Id.* at 6.

Similarly, Defendant does not dispute that the Court made a legal error in misidentifying the NVRA's voter removal protections that are afforded to registered voters, *id*. at 6-7, nor that applicants in pending status are outside of these protections, *id*. at 7-9. As such, Defendant's focus on the cancellation clock fails to respond to Plaintiffs' arguments. *See* Opp. at 8. Whether a cancellation clock is currently being enforced is beside the point. As Plaintiffs explain in their Motion, the evidence at trial demonstrated that Georgia has not previously, and does not currently, consider applicants in pending status to be covered by the NVRA's protections against arbitrary removal. Mot. at 6-9. Defendant does not dispute this, nor can he. Simply put, Plaintiffs proved at trial that applicants in pending status are not registered voters, and it was error for the Court to find otherwise.

Defendant's invocation of Mr. Jesus Eduardo Uzcategui's testimony contradicts the record evidence. First, contrary to Defendant's assertion, Plaintiffs do not ask that this Court resume trial to "resolve the status of a single voter." Opp. at 9. Rather, Plaintiffs provide Mr. Uzcategui's testimony to illustrate the unrebutted

evidence that applicants in pending status are not registered to vote because their pending registrations may be cancelled at any time. Mot. at 7-9.

Defendant then speculates that, rather than being caught in a cancellation clock, Mr. Uzcategui's "situation is far more easily explained as a failure by county officials to properly process his paper application." Opp. at 8.[2] But this argument is contradicted by the record evidence and representations of Defendant's counsel themselves. *See* Exs. 1, 2 (email exchanges between Plaintiffs' counsel Julie Houk and Defendant's counsel Bryan Tyson). Plaintiffs' trial Exhibit 148—moved into evidence without objection, Tr. 295:18-22—reflects Mr. Uzcategui's voter registration status on the Secretary's My Voter Page. The top of the first page contains a warning box stating "-111 DAYS UNTIL PENDING CLOCK EXPIRES." The same box on the next pages states "-35 DAYS UNTIL PENDING CLOCK EXPIRES." Whether or not Defendant intentionally turned on the cancellation clock in GARVIS, there is no doubt that it was programmed into the system and applied to Mr. Uzcategui.

---

[2] The only citation Defendant provides is Mr. Uzcategui's testimony that his registration was completed after he provided a copy of his passport to Plaintiffs' counsel, who then successfully advocated for the reversal of the rejection of his application. Defendant also ignores that the intervention of Plaintiff GALEO and Plaintiffs' counsel on Mr. Uzcategui's behalf is the only reason he has been able to vote without incident since his registration was restored. *See* Exs. 1, 2. Defendant's citation does not address why Mr. Uzcategui's registration was cancelled in the first place.

Defendant's repeated failure to categorically state that a cancellation clock may not be applied to applicants in pending status is tantamount to an admission that these applicants are not registered voters, as such voters would admittedly be covered by the NVRA. Mot. at 7-9. Defendant cannot have it both ways. If individuals in pending status are registered and able to "cast a regular ballot," *U.S. Student Ass'n Found. v. Land*, 546 F.3d 373, 383 (6th Cir. 2008), then they must, as a matter of law, be protected from arbitrary removals under the NVRA. They cannot be subject to removal pursuant to a cancellation clock. As such, the unrebutted evidence at trial shows that applicants in pending status are not registered in violation of the NVRA, and the Court erred in holding otherwise.

**B. The Court's ruling on Section 8(b)(1) of the NVRA was based on manifest error and should be amended.**

As set forth in Plaintiffs' Motion, Section 8(b)(1) of the NVRA requires that *all* applicants be treated the same. Defendant's application of the citizenship verification protocol solely to applicants who provide a driver's license violates the uniformity provision of Section 8(b)(1). *See* Mot. at 9-15.

In response, Defendant first *concedes* that not all voters are subject to the protocol and that not all voters provide documentary proof of citizenship before being placed into active status. Opp. at 3. In fact, Defendant instead describes specific *subsets* of voters to whom the protocol applies. *Id.* at 4-5. Defendant does not offer any authority as to why his admitted differential treatment of applicants

5

should still be considered uniform under the NVRA. Defendant fails to address the evidence presented by Plaintiffs that approximately 231,000 registered voters never provided documentary proof of citizenship and have not been subjected to Defendant's citizenship verification protocol. *See* Mot. at 11; Opp. at 10. Because "almost all," Opp. at 3, is not all, the Court's finding on uniformity constitutes clear error.

While providing no legal citations of his own, Defendant also fails to distinguish the authority identified by Plaintiffs in any meaningful way. Opp. at 11-13. He does not explain which precedent he is referencing when he argues that Plaintiffs' citations relate "only to the federal [voter registration] form," nor does he explain why this distinction would be significant in Georgia. Opp. at 11-12. Defendant elides the crucial point—Plaintiffs provided unrebutted evidence that federal and State forms are *treated equally in Georgia* for the purposes of voter registration, including the application of the citizenship verification protocol. Mot. at 12. In Georgia, if a process is illegal as applied to federal form applicants, it is illegal as to all applicants. *Id*. On this point, it is telling that Defendant does not address the critical argument that Georgia is *prohibited* from requiring documentary proof of citizenship from any voter registration applicant precisely because of its equal treatment of federal and state forms. *Id.* at 12-13.

Defendant's attempts to distinguish Plaintiffs' authority also fail. As Plaintiffs explain, the court in *Mi Familia Vota v. Fontes* found that requiring documentary proof of citizenship from applicants who did not submit it was permissible under the NVRA in Arizona only because the county recorders first had to review the registration files of "*all* registered voters." No. CV-22-00509-PHX-SRB, 2024 WL 862406, at *42 (D. Ariz. Feb. 29, 2024); Mot. at 13.[3] This is not what Georgia law requires. Contrary to Defendant's assertion, Opp. at 12, Georgia's protocol is analogous to the provision of Arizona law that was struck down as a violation of the NVRA because, in both cases, only naturalized citizens are required to provide documentary proof of citizenship. Mot. at 13-14. The non-uniform and discriminatory impact of the requirement was not merely the trigger for the investigation, as Defendant appears to claim, but rather the lynchpin of the court's holding. *Mi Familia Vota*, 2024 WL 862406, at *41.

Defendant's attempt to distinguish *United States v. Florida*, 870 F. Supp. 2d 1346 (N.D. Fla. 2012), also falls short. Defendant asserts, but does not explain, how "Florida's process in that case drastically differed from Georgia's process in this case." Opp. at 13. Nor can he, because the processes were nearly identical. Mot. at

---

[3] Moreover, and of great significance, Arizona has a bifurcated voter registration system and, unlike Georgia, may require documentary proof of citizenship for voters in non-federal elections. Mot. at 13 n.7.

7

14-15.[4] Defendant also references SAVE. Opp. at 13. To the extent that using SAVE would alter the analysis—which it would not—SAVE is not part of the trial record and it cannot be used to rescue the Secretary here. The Court's holding that Georgia's citizenship verification protocol complies with Section 8(b)(1) of the NVRA is grounded in clear errors of law and fact, and Plaintiffs respectfully ask that this Court alter its judgment.

### C. The NVRA preempts Defendant's policy preferences.

Defendant admits the NVRA requires "strict liability." Opp. at 13. As Plaintiffs explained in their Motion, the NVRA includes clear mandates that may not be set aside even if the Secretary thinks doing so would serve some other purported interest. Mot. at 15. After failing to engage with the errors identified by Plaintiffs, Defendant provides a laundry list of policy arguments about voter confidence and perceived fraud in support of his preference that Georgia maintain its non-uniform

---

[4] Even the basic parameters of Florida's program mapped directly onto Georgia's process. *United States v. Fla.*, 870 F. Supp. 2d at 1347-48 ("The Secretary compiled the list in a manner certain to include a large number of citizens. At least insofar as shown by this record, the list included any person who (1) as a noncitizen, obtained a driver's license and accurately disclosed to the Department of Highway Safety and Motor Vehicles that the person was not a citizen, (2) became a naturalized citizen, (3) registered to vote, accurately disclosing to the Supervisor of Elections that the person was a citizen, and (4) had not yet renewed the driver's license and so had not updated DHSMV's records to reflect the new citizenship status.").

and discriminatory citizenship verification process. Opp. at 13-15.[5] None of these reasons have a legal basis, and all of them are irrelevant to the question presented.

Defendant complains that Plaintiffs "desire that Georgia rely on the sworn statement of a voter on their application." *Id.* at 11 n.2. Plaintiffs ask only that Defendant comply with federal law. And Defendant ignores that the *Secretary himself* currently relies solely on an affirmation of citizenship from applicants who do not provide a driver's license number when registering to vote. Mot. at 11-12. Plaintiffs merely request the uniform treatment of all applicants in Georgia, as the NVRA requires.

Further, the fact that a procedure that violates the law only affects *some* voters does not mean that the procedure is permissible, as Defendant appears to suggest. *See* Opp. at 5. That additional names will continue to be added to the pending list is relevant for the Court to consider in fashioning its prospective injunctive relief. *See* Mot. at 5 n.3.

## CONCLUSION

Plaintiffs request that the Court amend its judgment and reopen trial or grant a new trial on Plaintiffs' NVRA claims, or grant whatever remedy the Court sees fit within its equitable discretion.

---

[5] Aside from the legal error of this reasoning, Defendant ignores that ensuring equitable access to the ballot box for naturalized citizens would also promote "voter confidence" while aligning with the mandates of the NVRA.

Respectfully submitted, this 6th day of June, 2024.

/s/ Bryan L. Sells
Bryan L. Sells
Georgia Bar No. 635562
The Law Office of Bryan L. Sells,
LLC
PO Box 5493
Atlanta, Georgia 31107
Tel: (404) 480-4212
Email: bryan@bryansellslaw.com

Ezra D. Rosenberg*
Julie Houk*
Ryan Snow*
Alexander Davis*
Heather Szilagyi*
Grace Thomas*
erosenberg@lawyerscommittee.org
jhouk@lawyerscommittee.org
rsnow@lawyerscommittee.org
adavis@lawyerscommittee.org
hszilagyi@lawyerscommittee.org
gthomas@lawyerscommittee.org
Lawyers' Committee for Civil Rights
Under Law
1500 K Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 662-8600
Facsimile: (202) 783-0857

Vilia Hayes*
Gregory Farrell*
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

Alice Huling*

Christopher Lapinig*
Danielle Lang*
Benjamin Phillips*
Melissa Neal*
Margaret Graham*
AHuling@campaignlegalcenter.org
CLapinig@campaignlegalcenter.org
DLang@campaignlegalcenter.org
BPhillips@campaignlegalcenter.org
MNeal@campaignlegalcenter.org
MGraham@campaignlegalcenter.org
Campaign Legal Center
1101 14th St. NW, Suite 400
Washington, DC 20005
Telephone: (202) 736-2200
Facsimile: (202) 736-2222

Meredyth L. Yoon
Georgia Bar No. 204566
Asian Americans Advancing Justice –
Atlanta
5680 Oakbrook Parkway, Suite 148
Norcross, Georgia 30093
myoon@advancingjustice-atlanta.org
Telephone: (404) 585-8466

*Admitted pro hac vice

Counsel for Plaintiffs

10

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1, the undersigned counsel hereby certifies that this document has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1.

Dated this 6th day of June 2024.

*/s/ Bryan L. Sells*
Georgia Bar No. 635562
The Law Office of Bryan L. Sells, LLC
PO Box 5493
Atlanta, Georgia 31107
Tel: (404) 480-4212
Email: bryan@bryansellslaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 6th, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the counsel of record in this case.

Dated this 6th day of June 2024.

*/s/ Bryan L. Sells*
Georgia Bar No. 635562
The Law Office of Bryan L. Sells, LLC
PO Box 5493
Atlanta, Georgia 31107
Tel: (404) 480-4212
Email: bryan@bryansellslaw.com